RUSS, AUGUST & KABAT
Benjamin T. Wang (SBN 228712)
bwang@raklaw.com
James S. Tsuei (SBN 285530)
jtsuei@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

MORRIS, MANNING & MARTIN, L.L.P.
Lawrence H. Kunin, Esq. (*pro hac vice*)
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Facsimile: (404) 365-9532

*Attorneys for Defendant*
BITPAY, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

OX LABS, INC.,

*Plaintiff,*

vs.

BITPAY, INC. and Does 1-10,

*Defendants.*

Case No. 2:18-cv-05934-MWF-KS

**DEFENDANT BITPAY, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Date: Sept. 9, 2019
Time: 10:00 AM
Place: Hon. Michael S. Fitzgerald

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. REBUTTAL ARGUMENT ........ 2

A. It is Plaintiff That Seeks a Manifestly Unjust Remedy; As Well As A Dangerous Precedent........ 2

B. The Burden to Identify the Proper Party in Interest is not Defendant's ........ 6

C. Statute of Limitations........ 8

III. CONCLUSION........ 8

BITPAY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT i Case No. 2:18-cv-05934-MWF-KS

# TABLE OF AUTHORITIES

## Cases

*Allstate Leasing Corp. v. Smith*,
238 Cal. App. 2d 128 (1965) ........ 2, 3

*Bank of Stockton v. Verizon Comm'ns, Inc.*,
No. 09-15909, 2010 WL 1474053 (9th Cir. April 14, 2010) ........ 4

*Betzer v. Olney*,
14 Cal. App. 2d 53 (1936) ........ 5

*Countrywide Fin. Corp. Mortgagebacked Sec. Litig. v. Bank of America Corp.*,
No. 2:11-ML-02265-MRP (MANx), 2014 WL 3529677 (C.D. Cal. July 14, 2014) ........ 7

*Dimick v. Donahue*,
Nos. 04-55461, 04-55473, 04-55546, 2006 WL 213990 (9th Cir. Jan. 30, 2006) ........ 5

*Krueger v. Bank of America*,
145 Cal. App. 3d 204 (1983) ........ 5

*Malikyar v. Sramek*,
No. C 07-03533 WHA, 2008 WL 4891020 (N.D. Cal. Nov. 12, 2008) ........ 7

*Midland Nat'l Life Ins. Co. v. Johnson*,
Case No. 11-CV-279-LAB-BGS, 2014 WL 12515160 (S.D. Cal. Mar. 27, 2014) ........ 6

*Myers v. Stephens*,
233 Cal. App. 2d 104 (1965) ........ 2, 3, 4

*Stan Lee Trading, Inc. v. Holtz*,
649 F. Supp. 577 (C.D. Cal. 1986) ........ 6

*Sun 'n Sand, Inc. v. United California Bank*,
21 Cal. 3d 671 (1978) ........ 6

*Tyrone Pac. Int'l, Inc. v. MV Eurychili*,
658 F.2d 664 (9th Cir. 1981) ........ 4

## Statutes

Cal. Code. § 3336 (a) ........ 2, 5

## Other Authorities

6A Fed. Prac. & Proc. Civ. § 1554 (3d ed.),
*Raising an Objection to Plaintiff's Status as the Real Party in Interest* ........ 7

RUSS, AUGUST & KABAT

Defendant, BitPay, Inc. ("BitPay") hereby files its Reply in Support of its Motion for Summary Judgment, and states:

**I. INTRODUCTION**

Plaintiff Ox Labs, Inc.'s ("Ox Labs") Brief in Opposition actually supports the basis for summary judgment. Ox Labs (i) cites case law that supports BitPay's position on the measure of damages, (ii) admits that it is not the real party in interest, (iii) after being challenged since 2017 is still unable to cite law in support of its position that it is entitled to a return of 200 bitcoin resulting from its own error; and (iv) relies on a few purported facts that are irrelevant and lack evidentiary support. Notably, Ox Labs takes no issue with the fact that the judgment it seeks will set a precedent that investment firms and banks with fiduciary duties will have *carte blanche* to charge their customers for their own negligence. Ox Labs also makes an incredible admission – that Ox Labs allegedly "knew" that 200 Bitcoins went missing before BitPay notified it of the error, but did not investigate further or notify BitPay. Instead, the record evidence is undisputed that BitPay brought the error to SFOX's attention.

Furthermore, Ox Labs presents no evidence of any wrongdoing by BitPay – the error was by SFOX. Applying the case law cited by Ox Labs, it would be manifestly unjust for the Court to award the relief Ox Labs seeks for its own subsidiary's error.

To be clear, SFOX did not give BitPay 200 bitcoin. SFOX made a ledger entry crediting approximately $57,000 to BitPay, represented by 200 bitcoins. There is no record evidence, just speculation at best, that BitPay actually received those bitcoins. There remain no questions of fact to proceed to trial – as a matter of law, the measure of damages is the value of SFOX's credit at the time of its own error.

RUSS, AUGUST & KABAT

## II. REBUTTAL ARGUMENT

### A. It is Plaintiff That Seeks a Manifestly Unjust Remedy; As Well As A Dangerous Precedent.

After being challenged since 2017 to identify any legal support for the relief Plaintiff seeks, Plaintiff is still unable to do so. Plaintiff's sole legal argument that it is entitled to a return of 200 bitcoin or its current value is the language in Cal. Code. § 3336 (a) that allows a remedy in an amount sufficient to indemnify a party for a loss that is the "***reasonable***" and proximate result of a "***wrongful act***" that "***a proper degree of prudence on his part would not have diverted***." Without any competent evidentiary support, Ox Labs claims that it is entitled to seek this remedy. In support, Ox Labs cites *Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (1965) and *Allstate Leasing Corp. v. Smith*, 238 Cal. App. 2d 128 (1965). Ox Labs' purported legal support, however, actually further supports summary judgment.

First, there is no "wrongful" act alleged against BitPay. It is undisputed the error was by SFOX, (Thobhani Decl. ¶ 4), there is no evidence BitPay knew of the error, and it is admitted that BitPay brought the error to SFOX's attention. (Thobhani Decl. ¶ 5).

Second, Ox Labs admits that it noticed in late 2016 that its accounts were short approximately 200 Bitcoins, and although it claims to have investigated (Thobhani Decl. ¶ 4), it clearly did not. Indeed, BitPay, which did not make the error, was able to find and give notice of the error. Furthermore, Thobhani's email to BitPay on March 22, 2017, contradicts his position regarding an investigation. Specifically, Thobhani stated: "As a result of the transaction we have made quite a few changes at SFOX (the subsidiary) and hired a new accounting firm to ensure this is never repeated again." In other words, SFOX had insufficient controls and perhaps should be looking to its accounting firm. There is no evidence BitPay is in any way responsible. The sole evidence is thus that a "proper degree of prudence" would have

averted the error. Simply put, Ox Labs or its accounting firm was negligent; there are no facts or law to suggest that BitPay is responsible for SFOX's negligence.

Third, BitPay offered to tender the proceeds from the sale of 200 bitcoins that occurred on the same day as the error (Kunin Decl.), but Plaintiff refused, clearly in hopes of not receiving a reasonable remedy, but to seek an unjust enrichment/windfall that would create a dangerous precedent allowing investment firms and banks to profit from their own errors by switching the risk of investment to the recipient of the error.

Fourth, and an incredible admission, Thobhani attests: "We have no way of knowing that BitPay sold the particular 200 coins in question (without our permission) and how much money BitPay actually made from selling the over-credited Bitcoins." ***In other words, by admission, Ox Labs is unable to present any evidence as to what benefit BitPay ever received*** other than perhaps the money already tendered. This also includes the inability to evidence that BitPay ever benefitted from bitcoin cash or bitcoin gold traceable to SFOX's error.

In sum, there is nothing arguably "reasonable" to support a judgment that would unjustly enrich Ox Labs for its own subsidiary's error.

Regarding case law, the remedy Ox Labs seeks would be manifestly unjust to BitPay, as both sides admit it was Ox Labs that made the error. In *Myers*, cited by Ox Labs, the Court awarded the plaintiff lost profits in a case where the defendant intentionally sold a house to a third-party that he was contractually obligated to sell to the plaintiff. The Court stated that "there must be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." 233 Cal. App at 119. Here, there was no act or omission of BitPay. Ox Labs may never have discovered the source of their crediting error had BitPay not rightfully disclosed it to Ox Labs.

Ox Labs' only other supporting case, *Allstate Leasing Corp.*, does not even reach the issue of the correct measure of damages. The Court simply vacated the

RUSS, AUGUST & KABAT

judgment for lack of jurisdiction in the superior court and explicitly states "without expressing an opinion on the proper amount of recovery" that the plaintiff had properly pled a large enough amount of damages for the case to be jurisdictionally valid in the superior court.  238 Cal. App. 2d at 133.

Yet, there are a multitude of cases supporting BitPay's position.  Specifically, that it would be manifestly unjust to BitPay to award the current value of 200 bitcoins to Ox Labs given the error was by Ox Labs, the ever-volatile and fluctuating value of bitcoin, Ox Labs' own negligence, and the lack of evidence of contrary to the fact that BitPay sold 200 bitcoin for approximately $57,000.  In *Bank of Stockton v. Verizon Comm'ns, Inc.*, the Court held that a bank failed to show damages beyond the amount tendered to it when a state controller sold the bank's shares.  The Court stated "under California law, '[a] plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts'" and that "***in light of the windfall*** the Bank could have reaped as a result of the decline in the share price after the State sold the stock, the district court properly rejected the Bank's claim for interest on that sum."  No. 09-15909, 2010 WL 1474053 (9th Cir. April 14, 2010) at *1 (emphasis added).  The Court relies on Ox Labs' cited case, *Myers*, to note that "courts may decline to award the 'value…at the time of conversion with interest' ***to avoid manifest injustice to the defendant***."  *Id.* (emphasis added).  Similarly here, Ox Labs asks the Court to confer a huge windfall due to its own error, despite having admitted to taking insufficient efforts to avoid the alleged damage in the first place.

In *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, the Court stated that even when applying the alternative provision, the courts look to the *value of the property* as the measure of damages, calculating it on a different basis only where justice demands.  *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664 (9th Cir. 1981) at 665-667.  So for instance, the Court stated that an alternative measure might be appropriate where the owner has voluntarily accepted return of his property, but its value has declined

as a result of the conversion. "In such a case, award of the full value of the property would be unfair to the defendant." *Id.* There is no factual dispute here between the parties that the crediting error was not a result of any wrongdoing on the part of BitPay. Ox Labs merely speculates that BitPay should have known or somehow investigated the crediting error when it happened, which ignores the fact that it trades hundreds of bitcoins a day. This is again switching the burden from the party making the error to the party that did not make the error. Indeed, if BitPay was intentionally attempting to conceal an inadvertent crediting error from the Ox Labs, there would be no motivation for BitPay to notify Ox Labs of that error.

California courts have also stated that a plaintiff seeking recovery under the alternative provision of the statute must plead and prove the existence of "special circumstances which require a different measure of damages to be applied." *Krueger v. Bank of America*, 145 Cal. App. 3d 204, 215 (1983) (quoting *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1936)). In *Krueger*, the Court found that the proper amount of damages was the value of the shares at the time of the taking, and that the plaintiff failed to establish the existence of special circumstances to invoke the alternative provisions of Cal. Civ. Code § 3336.

In *Dimick v. Donahue*, the Court awarded the value of the plaintiff's shares at the date of conversion. 2006 WL 213990 (9th Cir. Jan. 30, 2006) at *1. Notably, the Court stated that "absent compelling evidence of what [plaintiff] would have done with his stock, it was not clearly erroneous to fix its worth as of the date of conversion." *Id.* Here, Ox Labs cannot provide evidence of the "investigation" it undertook in 2016 when it allegedly discovered the loss of 200 bitcoins. If Ox Labs took at least a year, if not two, to discover the missing bitcoins, it not surprising that Ox Labs cannot provide any evidence of what it would have done with the bitcoins, absent the error, to justify invoking the alternative provisions of § 3336.

In addition, even in cases involving tangible assets, such as gold, the Court can simply take judicial notice of the value of that asset on the day it was converted.

*See, e.g.*, *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577 (C.D. Cal. 1986), where the Court took judicial notice, pursuant to Fed. R. Evid. 201, of the value of the gold on the date of the conversion. In fact, the Court stated that "there can be no reasonable dispute that there is an established market for gold worldwide and that the daily price of gold in precious metal markets in New York and London are published in various newspapers." *Id.* at 582. Similarly today, the value of bitcoin fluctuates daily, and there are established sources for determining that value.

Finally, even if a party may be excused from its own error (which BitPay does not concede), the equitable remedy is to return the party that committed the mistake to the position they would have been in, but-for the mistake. "It is now settled…that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, *unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund*." *Midland Nat'l Life Ins. Co. v. Johnson*, Case No. 11-CV-279-LAB-BGS, 2014 WL 12515160 (S.D. Cal. Mar. 27, 2014) at *5 (quoting *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 700 (1978)) (emphasis added).

In sum, case law does not support Ox Labs, but only BitPay. The only equitable remedy here for SFOX's own error is that it refunded the value of the 200 bitcoin that were traded that same day, which has already been tendered. Anything in addition would be manifestly unjust to Defendant as well as set a dangerous precedent condoning the potential negligence of the investment and banking systems by shifting the risks of the errors to their clients.

### B. The Burden to Identify the Proper Party in Interest is not Defendant's

Ox Labs attempts to reverse the burden of establishing that real party in interest by arguing that (i) BitPay did not cite legal authority; and (ii) BitPay never objected to Ox Labs' role as plaintiff, and (iii) Ox Labs is the entity communicated with regarding the dispute. These arguments are nonsensical and themselves lacking

legal support. What Ox Labs paints as half-hearted arises from Ox Labs' own admission.

First, the issue is not whether or not BitPay cited legal authority; it is that Ox Labs has admitted that the error was by its subsidiary, which is again admitted in the paragraph 2 of Thobani Declaration. That is a fact, not an issue of legal authority. Ox Labs has failed to state a claim.

Second, it is not BitPay's burden to ensure the correct party has filed a lawsuit; especially when the plaintiff admitted such fact in its own complaint. Stated another way, this is not a situation where it is unclear which party made the credit error – plaintiff itself admitted that its subsidiary made the error. There is no known legal authority that defendant must highlight a party issue plaintiff highlighted themselves. Indeed, the Federal Rules are silent on raising an objection that the plaintiff is not the real party in interest, nor do the rules indicate when the challenge should be made. 6A Fed. Prac. & Proc. Civ. § 1554 (3d ed.), *Raising an Objection to Plaintiff's Status as the Real Party in Interest*. However, the California Courts recognize that "[a]n action must be prosecuted in the name of the real party in interest." *Malikyar v. Sramek*, No. C 07-03533 WHA, 2008 WL 4891020 (N.D. Cal. Nov. 12, 2008) at *3. In addition, "the courts will not allow a parent company to pierce the corporate veil it created for its own benefit, so as to assert the claims of its subsidiary." *Countrywide Fin. Corp. Mortgagebacked Sec. Litig. v. Bank of America Corp.*, No. 2:11-ML-02265-MRP (MANx), 2014 WL 3529677 (C.D. Cal. July 14, 2014) at *2.

Third, there is no known legal support, and none is cited by Ox Labs, that because a parent engaged in communications about the error that it then becomes the *de facto* owner of the claim. By analogy, if a president of a corporation engaged in discussions about a legal issue, the president would not become the real party in interest.

**C. Statute of Limitations**

BitPay has nothing further to add to its statute of limitations position, which is still applicable, but it will not repeat its arguments here.

## III. CONCLUSION

For the reasons stated above, BitPay respectfully requests that the Court grant BitPay's Motion for Summary Judgment.

DATED: August 26, 2019

RUSS, AUGUST & KABAT
Benjamin T. Wang
James Tsuei

By: */s/ Benjamin T. Wang*

Attorney for Defendant
BitPay, Inc.

## CERTIFICATE OF SERVICE

I hereby certify pursuant to the Federal Rules of Civil Procedure and LR 5-3 and 5-4 that **DEFENDANT BITPAY, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served upon the attorney(s) of record for each party through the ECF system as identified on the Notice of Electronic Filing on August 26, 2019.

By: */s/ Benjamin T. Wang*
Benjamin T. Wang

RUSS, AUGUST & KABAT