1  RUSS, AUGUST & KABAT
2  Benjamin T. Wang (SBN 228712)
   bwang@raklaw.com
3  James S. Tsuei (SBN 285530)
4  jtsuei@raklaw.com
   12424 Wilshire Boulevard, 12th Floor
5  Los Angeles, California  90025
   Telephone:   (310) 826-7474
6  Facsimile:    (310) 826-6991
7
8  MORRIS, MANNING & MARTIN, L.L.P.
   Lawrence H. Kunin, Esq. (*pro hac vice*)
9  1600 Atlanta Financial Center
10 3343 Peachtree Road, N.E.
   Atlanta, Georgia 30326
11 Telephone: (404) 233-7000
12 Facsimile: (404) 365-9532
13
   *Attorneys for Defendant*
14 BITPAY, INC.
15
16        **UNITED STATES DISTRICT COURT**
17        **CENTRAL DISTRICT OF CALIFORNIA**
          **WESTERN DIVISION**
18
19
20 OX LABS, INC.,                      Case No. 2:18-cv-05934-MWF-KS

21             *Plaintiff*,           **DEFENDANT BITPAY, INC.'S**
                                       **MEMORANDUM OF**
22 vs.                                 **CONTENTIONS OF FACT**
                                       **AND LAW**
23 BITPAY, INC. and Does 1-10,
24             *Defendants*.
25
26
27
28

RUSS, AUGUST & KABAT

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 1

II.     CLAIMS AND DEFENSES (L.R. 16-4.1)............................................ 1

        A.      Summary Statement of the Claims Ox Labs, Inc. Pleaded and
                Plans to Pursue ....................................................................... 3

        B.      Elements Required to Establish Ox Lab's Claims .............. 3

        C.      Key Evidence Opposing Ox Lab's Claims........................... 5

        D.      Summary of Defendant's Affirmative Defenses ................. 9

        E.      Elements Required to Establish Defendants' Affirmative
                Defenses ................................................................................ 10

        F.      Key Evidence in Support of Defendants' Affirmative Defenses ....... 12

        G.      Anticipated Evidentiary Issues ........................................... 16

        H.      Issues of Law Germane to the Case .................................... 17

IV.     JURY TRIAL (L.R. 16-4.4)................................................................ 26

        A.      Issues Triable to the Jury ..................................................... 26

        B.      Issues Tried to the Court....................................................... 26

V.      ATTORNEYS' FEES (L.R. 16-4.5) ................................................... 1

RUSS, AUGUST & KABAT

i

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

# TABLE OF AUTHORITIES

**Cases**

*A.J. Fistes Corp. v. GDL Best Contractors, Inc.*,
  38 Cal. App. 5th 677 (2019) .......................................................25

*Allstate Leasing Corp. v. Smith*,
  238 Cal. App. 2d 128 (1965) ......................................................22

*AmerUS Life Ins. Co. v. Bank of America, N.A.*,
  143 CA4th 631 (2006) ...............................................................10

*Bank of Stockton v. Verizon Comm'ns, Inc.*,
  No. 09-15909, 2010 WL 1474053 (9th Cir. April 14, 2010).................18, 27

*Brinkley-Douglas Fruit Co. v. Silman*,
  33 Cal. App. 643 (1917) .............................................................22

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal.App.4th 151Cal.Rptr.2d 109 (2001).....................................27

*Cerra v. Blackstone*,
  172 Cal. App. 3d 604 (1985) .......................................................21

*CFTC v. McDonnell*,
  287 F. Supp. 3d 213 (E.D.N.Y. 2018) ......................................11, 23

*Commodity Futures Trading Commission v. My Big Coin Pay, Inc.*,
  334 F. Supp. 3d 492 (D. Mass. 2018)..............................................8

*County of San Bernardino v. Walsh*,
  158 Cal.App.4th 533 69 Cal.Rptr.3d 848 (2007) ..............................27

*Dimick v. Donahue*,
  Nos. 04-55461 2006 WL 2139990 (9th Cir. Jan. 30, 2006) ..................18

*Flores v. California Department of Corrections and Rehabilitation*,
  224 Cal. App. 4th 199 (2014).......................................................22

*Giacomelos v. Bank of America Nat. Trust & Sav. Ass'n*,
  237 Cal. App. 2d 99Cal. Rptr. 612 (1st Dist. 1965) ..........................17

*Haigler v. Donnelly*,
  18 Cal. 2d 674 (1941) ................................................................24

*Hillyer v. Eggers*,
  32 Cal. App. 764 (1917) .............................................................19

*Horn v. Klatt*,
  65 Cal. App. 2d 510 (1944) .........................................................23

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...........................................5

ii

RUSS, AUGUST & KABAT

*Kagee v. Bencich*,
   27 Cal. App. 2d 469 (3d Dist. 1938)............................................................17

*Kee v. Becker*,
   54 Cal. App.2d 466 (2d Dist. 1942)............................................................18

*Kessinger v. Organic Fertilizers, Inc*.,
   151 Cal. App. 2d 741 (1957)......................................................................22

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ...................................................................21

*Krueger v. Bank of America*,
   145 Cal.App.3d 204 193 Cal. Rptr. 322 (1983)....................................18, 26

*Krueger v. Wyeth, Inc.,*
   2019 WL 2743942 (C.D. Cal. July 1, 2019).............................................2, 25

*Lauriedale Assocs. Ltd. v. Wilson*,
   7 Cal. App. 4th 14399 Cal. Rptr. 2d 774 (1992) ......................................24

*Los Angeles Federal Credit Union v. Madatyan*,
   209 Cal. App. 4th 1383 (2012) ..................................................................21

*Lueter v. State of Cal*,
   115 Cal. Rptr. 2d 68 (Cal. App. 3d 2002)..................................................18

*Matson v. Vorhariwatt (In re Vorhariwatt)*,
   No. 17-cv-1255-WQH-MDD, U.S. Dist. LEXIS 208560 (S.D. Cal. Dec.
   18, 2017) ...........................................................................................20, 21

*Midland Nat'l Life Ins. Co. v. Johnson*,
   Case No. 11-CV-279-LAB-BGS, 2014 WL 12515160 (S.D. Cal. Mar.
   27, 2014) ...............................................................................................19

*Minsky v. L.A.*,
   11 Cal. 3d 113 (1974) ................................................................................22

*Myers v. Stephens*,
   233 Cal. App. 2d 104 (1965) ......................................................................12

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
   6 C3d 176 (1971) .......................................................................................10

*Nelson v. Serwold*,
   687 F.2d 278 (9th Cir. 1982) ......................................................................25

*Peterson v. Sherman*,
   68 Cal. App. 2d 706 (1945) ........................................................................19

*Pilch v. Milikin*,
   200 Cal. App. 2d 212 (1962) ......................................................................22

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105Cal. Rptr. 3d 832 (2014)............................................4

iii

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF
FACT AND LAW**

RUSS, AUGUST & KABAT

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
   29 Cal. App. 5th 230 (2018) ...................................................25

*Regents of Univ. of California v. Global Excel Mgmt., Inc.*,
   Case No.: SA CV 16-0714-DOC (Ex), 2017 WL 3579704 (C.D. Cal.
   2017) ................................................................................11

*Saptes v. Dameron Hospital Assn.*,
   114 Cal. App. 4th 208 (2003) ................................................17

*Shahood v. Cavin*,
   154 Cal. App. 2d 745 (1957) .................................................24

*Steele v. Marsicano*,
   102 Cal. 666 (1894) ..............................................................18

*Strasberg v. Odyssey Group, Inc.*,
   51 CA4th at 917 (1996) .........................................................11

*Sun'n Sand, Inc. v. United California Bank*,
   21 Cal. 3d 671 (1978) ...........................................................19

*Symphony FS, Ltd. v. Thompson*,
   No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641 (E.D. PA. Dec. 20,
   2018) ..........................................................................10, 23

*Tsai v. Wang*,
   Case No. 17-cv-00614, 2017 WL 2587929 (N.D. Cal. June 14,
   2017) ...................................................................11, 19, 24

*Welco Eletronics, Inc. v. Mora*,
   223 Cal. App. 4th 202 (2014) ................................................20

**Statutes**

Cal. C.C.P. § 339...................................................................10

Cal. Civ. Code § 3336...........................................................3, 4, 9

Cal. Civ. Code § 3379...............................................................19

Cal. Civ. Code. §38(c) .............................................................10

**Other Authorities**

2 Witkin, Cal. Procedure
   (2d ed. 1970) Actions, § 114................................................22

Restatement (Third) of Restitution and Unjust Enrichment
   § 50 (2011).........................................................................25

**Rules**

Fed. R. Civ. Proc. Rule 12 .................................................10, 26

iv

1    Pursuant to Local Rule 16-4 and the Court's Order Re: Defendant BitPay,

2    Inc.'s Motion for Summary Judgment (Doc. 36), Defendant BitPay, Inc. ("BitPay")

3    respectfully submits the following Memorandum of Contentions of Fact and Law.

### BITPAY'S CONTENTIONS OF FACT AND LAW

## I.    INTRODUCTION

At a high level, BitPay sees the issues in the lawsuit as relatively narrow:

1.  BitPay is not liable for conversion because it did nothing wrongful and already tendered unconditionally the value of Ox Labs' error. *For clarity, in its order on Motion for Summary Judgment the Court termed this payment an "offer of settlement."  The payment was not an offer, it was an unconditional payment not linked to any settlement or release*.

2.  BitPay is not liable for unjust enrichment because it has received no benefit other than the amount it already unconditionally paid.

3.  BitPay never had the 200 bitcoin – it was merely a ledger error, the bitcoin was either sold or transferred to another exchange on which it was sold.  Even if BitPay can be deemed to have possession of the erroneous bitcoin, they have been liquidated and are not connected to any ongoing holdings or other purchases. This is the largest fallacy in Ox Labs' position – a complete disconnect between the assets erroneously transferred, and any ongoing or present holdings – which is required by all case law cited by Ox Labs.

4.  If BitPay is liable, the following is BitPay's contention regarding the appropriate remedy:

    a.  If there was an award of damages, one issue is whether the measure of damages is as of the date of the error or some other date. BitPay's contention is that it is at the date of the error for the reasons stated in its motion for summary judgment and the Court's resulting order. *In its Order on Motion for Summary Judgment, the Court indicated agreement that the date of measure is the date of the error, leaving open the question of the value on that day.*

    b.  200 bitcoin are not subject to transfer to Ox Labs, both generally and in the context of the facts of this lawsuit:

RUSS, AUGUST & KABAT

1

**PLAINTIFF PAVO SOLUTIONS, LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

i. In its Order on Summary Judgment, the Court confirms that regardless of the actual facts, *Krueger v. Wyeth, Inc.,* 2019 WL 2743942 (C.D. Cal. July 1, 2019), confirms that Ox Labs is not entitled to the value of the increased value in the bitcoins absent special circumstances (none of which are present here), which is exactly what would happen if an ultimate award were to order transfer of 200 bitcoins – meaning the risk and burden of investment would have been changed in hindsight to BitPay, resulting in a windfall. Indeed, such a result would give Ox Labs carte blanche to decide which of BitPay's trades or non-trades it likes in hindsight, which is exactly what Ox Labs has done by seeking valuations on different dates.

ii. As a general matter, bitcoin is a commodity that is traded and changes in value.  It would be improper, invalid, and inequitable to force a transfer of an asset that puts the plaintiff in a better position than defendant, especially when the defendant committed no wrongdoing.  Such relief would also switch the decision-making and risk of investment to the defendant, giving a potential windfall to plaintiff.

iii. Factually, there is no connection between the error and any ongoing benefit to or holdings by BitPay. In its Motion for Summary Judgment the Court also noted that "both parties agree that "it is not possible to trace the 200 Bitcoins to any particular transaction . . . .  Given this limitation it seems equitable to determine the value of the 200 Bitcoins on the day that Plaintiff erroneously credited Defendant." As it did not do on summary judgment, Ox Labs simply cited to the error, and that it demanded a "return" when BitPay disclosed the error.  All case law cited by Ox Labs has a critical component that Ox Labs cannot show – identification of property that can be subject to transfer.  Here, there is nothing to "return."  BitPay never had the bitcoin in the first place, it was just a ledger entry that was either traded or withdrawn to another platform and traded there.  Notably, BitPay executed trades to the zero level on the trading exchanges it used. This is necessary because BitPay enables customers to make and receive bitcoin payments, but the customer desires cash.  Thus, BitPay needs to acquire and liquate bitcoin on a regular basis.  All trading exchanges

2

connected in any way to the error, even in theory, were zeroed out within days of the error, as is normal practice. BitPay thus only realized the cash from the disposition of the bitcoin. Simply because BitPay happens to have bitcoin in other accounts does not give rise to a remedy to transfer any such bitcoin.

iv. BitPay also makes trading decisions based on balances.  Ox Labs now seeks to undo trading decisions.

v. The only case cited by Ox Labs that purports to address an alleged fungible nature of bitcoin, *Horn v. Klatt*, a 1944 case, actually supports BitPay.  *Horn* stood for the proposition that a party is entitled to a return of things of the same kind of quality.  *Horn* of course did not address bitcoins or any commodity.  Unlike a dollar, for example, Bitcoins are not the same kind of quality from day to day.

vi. BitPay believes this is a question for the Court.

## II.   CLAIMS AND DEFENSES (L.R. 16-4.1)

### A.   Summary Statement of the Claims Ox Labs Pleaded

Ox Labs asserts the following claims against BitPay:

Claim 1:  Conversion.

Claim 2:  Unjust enrichment.

### B.   Elements Required to Establish Ox Lab's Claims

To prevail on its conversion claim, Ox Labs must prove the following elements:

Elements Required to Establish Plaintiff's Claim for Conversion:

1. Ox Lab's ownership or right to possession of the property at the time of the conversion,

2. BitPay's conversion by a ***wrongful*** act or disposition of property rights, and

3. Damages. Pursuant to Cal. Civ. Code § 3336, in an action for conversion a plaintiff may recover:

3

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   a.  (1) the value of the property at the time of the conversion, with the interest from that time; or

   b.  (2) an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted.

*See Prakashpalan v. Engstrom, Lipscomb & Lack,* 223 Cal. App. 4th 1105, 167 Cal. Rptr. 3d 832 (2014); Cal. Civ. Code § 3336.

   4.  Ox Labs seeks an alternate remedy of "return" of the bitcoin.  There is no known legal authority to support such relief with regard to the type of asset at issue – one that changes in value, is part of prior trading decisions, and is not possessed by the defendant. The result may be different if the asset at issue were simply filed away – no case law suggests the same result where the asset is subject to and in fact was part of the mix of trading and trading decisions. There is no connection between the error and any ongoing bitcoin holdings.  Ox Labs' position is rather simplistic yet false – it wants judicial approval for the fact that it is entitled to a transfer of other bitcoin that have a dramatically different value simply because BitPay happens to have other bitcoin that were in no way affected by the error. As noted above, the closest case cited by Ox Labs was *Horn v. Klatt*, a 1944 case, which actually supports BitPay. Bitcoin that BitPay happens to own is not of the same quality or value as the bitcoin at the time of the error.  Ox Labs seeks a windfall, using investment decisions of BitPay, to take advantage of its own error.

Elements Required to Establish Plaintiff's Claim for Unjust Enrichment:

   1.  BitPay's receipt of a benefit; and

   2.  Unjust retention of the benefit at the expense of Ox Labs.

4

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*In re ConAgra Foods Inc.,* 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012). The facts show that BitPay quickly traded the erroneous bitcoin and realized approximately $57,000, which has been paid to Ox Labs.

**C.    Key Evidence in Opposition to Ox Labs' Claims**

Claim 1: Conversion

BitPay intends to present the following evidence establishing that a conversion did not occur as there was no wrongful act by BitPay, or in the alternative, if conversion is found the only allowable measure of damages is the value of the property at the date of the alleged conversion, on July 10, 2015.

- BitPay makes bitcoin deposits to exchanges such as SFOX throughout the day as BitPay accumulates bitcoin through its regular services.  These deposits are typically in blocks of 100 coins or so.  Gallippi Declaration ¶ 3.[1]

- Orders to sell bitcoin for cash are placed throughout the day, but they are asynchronous and not connected to the deposits. Sell orders are typically based on market activity and liquidity.  It is not uncommon for BitPay to let deposits accumulate at the exchange for several hours or days if the market was not good for selling, and it is not uncommon for BitPay to make many sales during the day.  Therefore, there is no reason for BitPay to notice any bitcoin balance being out of balance, including on July 10, 2015, or at any other time prior to the error being discovered on February 2017.  Gallippi Decl. ¶ 5.

- The transaction record printed from SFOX's platform for July 2015 reflects that on July 10, 2015 (the same date as alleged in the Complaint), at 17:46 there were two deposits of 100 bitcoins each.

[1] Declarations cited herein refer to those filed with BitPay's Motion for Summary Judgment (D.I. 29).

5

RUSS, AUGUST & KABAT

These are the 200 bitcoins SFOX erroneously credited to BitPay. The transaction record also reveals two sales of 100 bitcoin each on July 10, 2015 at 23:58 and 23:59 netting proceeds of $28,603.45 and $28,613.11, respectively, for a total of $57,216.56. Minus fees, the net proceeds were $57,029.59. Getch Decl. ¶ 5 and Exhibit C thereto; Gallippi Decl. ¶ 7 and Exhibit A thereto.

- This transaction register also reflects the daily and ongoing buy-sell nature of BitPay transactions on the SFOX platform. Getch Decl. ¶ 6; Gallippi Decl. ¶ 8.

- The evidence will also show that at best, the erroneous bitcoin was transferred to alternate trading platforms, Kraken and ItBit, shortly after the error, and that those accounts were then liquidated to zero. This is the nature of the business. Shortly after the error, SFOX, Kraken, and ItBit were traded to zero, meaning any connection to the error, except for dollar amounts realized, was lost. This is a necessary part of the business, as BitPay's business is to enable customers to accept and pay for services via bitcoin, but the customers want cash, meaning BitPay as a natural process must often liquidate bitcoins.

- Akbar Thobani of Ox Labs also sent a communication to Bryan Krohn at BitPay that confirms the same deposits reflected on the July 2015 transactional record. Getch Decl. ¶ 7 and Exhibit C thereto; Kunin Dec. ¶ 3 and Exhibit A thereto. Mr. Thobani's communication also states that the error was discovered as part of a standard account reconciliation process, which the Complaint ¶ 15 alleges was February 16, 2017.

- Mr. Thobani's communication omits the sale of 200 bitcoin on July 10, 2015, although it refers to a withdrawal of 200 bitcoin on July 11,

6

2015.  Although this does not align with the 200 erroneously deposited and sold bitcoin, even if it did, the transaction record reflects that the trading price closest in time would be the entry on July 11, 2015 at 8:53, at which the trading price was $295, netting $59,000.  Minus fees, that would be is $58,823.00.

- Given the ongoing buy-sell nature of bitcoins, it is not possible to trace these 200 bitcoins to any particular transaction, but BitPay is not a bank that deposits and retains bitcoins such that the particular bitcoins at issue would still be possessed by BitPay.  Rather, BitPay's only benefit from the erroneously deposited bitcoins is the net $57,029.59 it realized from the sale on July 10, 2015. Getch Decl. ¶ 8; Gallippi Decl. ¶ 9. This is further described above.

- There was no wrongful act on the part of BitPay, as neither BitPay nor Ox Labs discovered the error until *BitPay* was the one to notify counsel of the crediting error.  Getch Decl. Ex. A.

- On July 12, 2017, BitPay, through counsel, unconditionally sent counsel for Ox Labs a check payable to San Francisco Open Exchange ("SFOX") a check in the amount of $57,216.55.  Kunin Decl. ¶ 2 and Exhibit A thereto.

- The error by SFOX was on July 10, 2015 (Complaint ¶ 11), and the Complaint was filed on July 6, 2018 (Doc. 1), which is almost three years after the error.

Claim 2: Unjust Enrichment

In addition to the evidence above, BitPay intends to present the following evidence and categories of evidence establishing that it would be Ox Labs who would be unjustly enriched by the windfall of 200 bitcoins at their present value:

7

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

RUSS, AUGUST & KABAT

- Evidence and testimony regarding the valuation of 200 bitcoins on the day that the crediting error occurred.  BitPay's transaction record states that two sales of 100 bitcoin each were made on July 10, 2015 at 23:58 and 23:59 netting proceeds of $28,603.45 and $28,613.11, respectively for a total of $57,216.56.  Getch Decl.  ¶ 5 and Exhibit C thereto; Gallippi Decl. ¶ 7 and Exhibit A thereto.

- Testimony from BitPay employees that they often zero out BitPay's bitcoin on trading exchanges, making it impossible to trace Ox Lab's specifically claimed 200 bitcoins, let alone allowing for the possibility that such 200 bitcoins remained in BitPay's possession for over four years. This is part of ordinary business practice.

- BitPay's only benefit from the erroneously deposited bitcoins is the net $57,029.59 it realized from the sale on July 10, 2015.  Getch Decl. ¶ 8; Gallippi Decl. ¶ 9.

- Ox Labs' contention that BitPay was unjustly enriched not only by the 200 bitcoins allegedly retained, but by 200 Bitcoin Gold and 200 Bitcoin Cash is impossible to prove.  Ox Labs contended in their Opposition to BitPay's Motion for Summary Judgment (Dkt. 31) that in August and October of 2017, any person who possessed Bitcoin was subject to two "hard forks" during which possessors of Bitcoin also received the same number of new virtual currencies called Bitcoin Gold and Bitcoin Cash.  Opposition Brief at 2-3.  Ox Labs provides no proof that a) BitPay retained an extra 200 bitcoins past July 2015 when the crediting error occurred; b) that Ox Labs would have continued to possess those specific 200 bitcoins for over two years in order to collect said "hard forks."  Furthermore, Bitcoin is a commodity. *See, e.g., Commodity Futures Trading Commission v. My Big Coin Pay, Inc*., 334 F. Supp. 3d 492 (D. Mass. 2018).  Unlike currency

RUSS, AUGUST & KABAT

8

such as a dollar, a commodity changes in quality and value, and is subject to trading and investment decisions.

### D. Summary of Defendant's Counterclaims and Affirmative Defenses

BitPay has not asserted any counterclaims against Ox Labs.

BitPay has pleaded the following affirmative defenses:

First Affirmative Defense (Failure to State a Claim Upon Which Relief Can be Granted:  BitPay asserts that the Complaint fails to state a claim upon which relief can be granted.

Second Affirmative Defense (Statute of Limitations):  Ox Labs' claims are barred by (i) a two year statute of limitations on conversion of intangible property; and (ii) the unavailability of a claim for unjust enrichment where there is an adequate remedy at law.  Conversion provides an adequate remedy at law, or if the underlying conversion claim has expired, the unjust enrichment claim has as well.  The discovery error does not apply, as it was Ox Labs' own error to discover.

Third Affirmative Defense (Payment):  The claims are barred by payment.

Fourth Affirmative Defense (Ox Labs' Bitcoin is No Longer in BitPay's Possession):  The claims are barred because BitPay no longer has the bitcoin at issue to return.

Fifth Affirmative Defense (Remedy for Conversion Has Already Been Tendered): Ox Labs' claim for 200 bitcoin is barred by Cal. Civ. Code § 3336, which states that the remedy for conversion is the value of the property at the time of the conversion, which was already unconditionally tendered by BitPay to Ox Labs.  *For clarity, in its order on Motion for Summary Judgment the Court termed this payment an "offer of settlement."  The payment was not an offer, it was an unconditional payment not linked to any settlement or release.*  Additionally, the alternative remedy for damages that Ox Labs seeks under § 3336 is unavailable as Ox Labs has not pled special circumstances warranting an alternative remedy, and it would entail a

9

RUSS, AUGUST & KABAT

manifestly unjust outcome to BitPay, explicitly disallowed by the California courts. Also, as addressed here, a so-call "return" of the bitcoin is not an available remedy.

Sixth Affirmative Defense (Barred by Laches, Waiver and/or Estoppel): A claim for unjust enrichment is barred as BitPay is an innocent recipient who has committed no misconduct in the transaction concerned and bears no responsibility for the unjust enrichment in question.

### E. Elements Required to Establish Defendants' Affirmative Defenses

Elements Required to Establish BitPay's First Affirmative Defense
Of Failure to State a Claim Upon Which Relief Can Be Granted

1. The Complaint fails to state a claim upon which relief can be granted against BitPay. Fed. R. Civ. Proc. Rule 12.

Elements Required to Establish BitPay's Second Affirmative Defense
of Statute of Limitations

1. Bitcoins are an intangible asset and therefore the two-year statute of limitations apply. Cal. C.C.P. § 339; *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 C3d 176, 182 (1971). As also stated by Ox Labs: *Symphony FS, Ltd. v. Thompson*, No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641, at *1 n.1 (E.D. PA. Dec. 20, 2018) ("Bitcoin is the most prominent example of cryptocurrency, an electronic form of currency with ***no tangible format***") (emphasis added) (cited by Plaintiff).

2. The statute of limitations on a conversion claim runs from the date of taking (or other act of conversion), even if plaintiff is unaware of the taking. *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 CA4th 631, 639 (2006); Cal. Civ. Code. §38(c).

3. Tolling of the statute of limitations should not apply, as tolling applies "until the beneficiary *ought* to have discovered the existence of the cause of action for conversion" and Ox Labs did not undertake any efforts to reasonably ascertain

10

discovery of the error. *Strasberg v. Odyssey Group, Inc*., 51 CA4th at 917 (1996). Indeed, it was their own error in their own control.

<u>Elements Required to Establish BitPay's Third Affirmative Defense</u>

<u>of Payment</u>

1.  BitPay in good faith tendered the full amount of the proceeds from the sale of the 200 bitcoins on July 10, 2015, the day of the inadvertent credit error, as full satisfaction of the claim, and the amount was unliquidated/subject to a bona fide dispute, and the claimant obtained payment of the instrument. *Regents of Univ. of California v. Global Excel Mgmt., Inc*., Case No.: SA CV 16-0714-DOC (Ex), 2017 WL 3579704 (C.D. Cal. 2017). This payment was unconditional and not tied to any settlement or release.

<u>Elements Required to Establish BitPay's Fourth Affirmative Defense</u>

<u>that Ox Labs' Bitcoins are no Longer in BitPay's Possession</u>

1.  BitPay will prove that on the date of the crediting error BitPay sold the 200 bitcoins at issue. Additionally, Ox Labs cannot prove that the specific 200 bitcoins at issue, transferred to BitPay, are still in its possession. In order to maintain a cause of action for replevin, which Ox Labs essentially pleads, the property must be described with a reasonable degree of certainty, and "as a rule, money is not the subject of such an action unless it be marked or designated in some manner as to make it specific as regards its capability of identification." *Tsai v. Wang*, Case No. 17-cv-00614, 2017 WL 2587929 (N.D. Cal. June 14, 2017). Further, Bitcoin is a tradeable commodity (citations above *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228-29 (E.D.N.Y. 2018) (cited by Ox Labs)) that changes value, and not currency like a dollar that is always worth a dollar.

<u>Elements Required to Establish BitPay's Fifth Affirmative Defense</u>

<u>That the Remedy for Conversion has Already Been Paid</u>

1.  In order to seek a remedy for conversion, "there must be some reasonable connection between the act or omission of the defendant and the damage which the

11

RUSS, AUGUST & KABAT

plaintiff has suffered." *Myers v. Stephens*, 233 Cal. App. 2d 104, 119 (1965).  It is undisputed that the error was committed by Ox Labs, there is no evidence BitPay knew of the error, and it is admitted that BitPay brought the error to Ox Labs' attention.  Thobhani Decl. ¶ 4, 5.

Elements Required to Establish BitPay's Sixth Affirmative Defense

Of Laches, Waiver and/or Estoppel

1.  Ox Labs concealed material facts.

2.  While knowing or had virtual knowledge of the facts.

3.  To BitPay, who was actually and permissibly ignorant of the truth.

4.  With the actual or virtual intention that BitPay act on the representation or concealment; and

5.  BitPay was induced to act to its detriment.

Here, the result sought by Ox Labs would enable it to be negligent in committing an error, fail to fully investigate, and then take advantage of the investment risk and decisions of BitPay. Indeed, such a result would give Ox Labs carte blanche to decide which of BitPay's trades or non-trades it likes, which is exactly what Ox Labs has done by seeking valuations on different dates.

**F.    Key Evidence Supporting Defendants' Affirmative Defenses**

First Affirmative Defense (Failure to State a Claim Upon Which Relief Can Be Granted):

BitPay intends to present the following evidence establishing all elements of its first affirmative defense:

- All evidence outlined in § II.C, *supra*.

Second Affirmative Defense (Statute of Limitations):

BitPay intends to present the following evidence establishing all elements of its second affirmative defense:

- The transaction record printed from SFOX's platform for July 2015 reflects that July 10, 2015 at 17:46 there were two deposits of 100

12

RUSS, AUGUST & KABAT

bitcoins each. These are the 200 bitcoins SFOX erroneously credited to BitPay. The transaction record also reveals two sales of 100 bitcoin each on July 10, 2015 at 23:58 and 23:59 netting proceeds of $28,603.45 and $28,613.11, respectively, for a total of $57,216.56. Minus fees, the net proceeds were $57,029.59. Getch Decl. ¶ 5 and Exhibit C thereto; Gallippi Decl. ¶ 7 and Exhibit A thereto. Furthermore, even if the bitcoin was not liquated that day, all accounts arguable connected to the erroneous credit were zeroed-out, eliminating all ongoing benefit from the error.

- Given the ongoing buy-sell nature of bitcoins, it is not possible to trace these 200 bitcoins to any particular transaction. Regardless, BitPay trading accounts did hit zero in the days that followed the error, so traceability or not, there was no bitcoin to connect to the error.

- BitPay's only benefit from the erroneously deposited bitcoins is the net $57,029.59 it realized from the sale on July 10, 2015. Getch Decl. ¶ 8; Gallippi Decl. ¶ 9.

- There was no wrongful act on the part of BitPay, as neither BitPay nor Ox Labs discovered the error until *BitPay* was the one to notify counsel of the crediting error. Getch Decl. Ex. A.

- Ox Labs, by its own admittance, failed to diligently discover its own error, and has even admitted that it cannot know whether BitPay still possesses the 200 bitcoins it seeks to recover. "We have no way of knowing that BitPay sold the particular 200 coins in question (without our permission) and how much money BitPay actually made from selling the over-credited Bitcoins." Thobhani Decl. ¶ 7. BitPay will establish that despite lack of traceability – which itself is fatal to Ox

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Labs' burden of proof – BitPay did liquidate all bitcoins that could

have in theory resulted from the error.

Third Affirmative Defense (Payment):

BitPay intends to present the following evidence establishing all elements of
BitPay's fourth affirmative defense:

- Upon discovery of the error, BitPay unconditionally paid 100% of the
profit it earned as a result of Ox Labs' error, so any debt has already
been paid and satisfied. *For clarity, in its order on Motion for
Summary Judgment the Court termed this payment an "offer of
settlement." The payment was not an offer, it was an unconditional
payment not linked to any settlement or release*.

Fourth Affirmative Defense (Ox Labs' Bitcoins are no Longer in BitPay's
Possession):

BitPay intends to present the following evidence establishing all elements of
BitPay's fourth affirmative defense:

- BitPay makes bitcoin deposits to the exchanges such as SFOX
throughout the day as BitPay accumulates bitcoin through its regular
services.  These deposits are typically in blocks of 100 coins or so.
Gallippi Declaration ¶ 3.

- Orders to sell bitcoin for cash are placed throughout the day, but they
are asynchronous and not connected to the deposits. Sell orders are
typically based on market activity and liquidity.  It is not uncommon
for BitPay to let deposits accumulate at the exchange for several
hours or days if the market was not good for selling, and it is not
uncommon for BitPay to make many sales during the day.  Therefore,
there is no reason for BitPay to notice any bitcoin balance being out
of balance, including on July 10, 2015, or at any other time prior to
the error being discovered on February 2017.  Gallippi Decl. ¶ 5.

14

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF
FACT AND LAW**

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

- The transaction record printed from SFOX's platform for July 2015 reflects that July 10, 2015 (the same date as alleged in the Complaint), at 17:46 there were two deposits of 100 bitcoins each. These are the 200 bitcoins SFOX erroneously credited to BitPay. The transaction record also reveals two sales of 100 bitcoin each on July 10, 2015 at 23:58 and 23:59 netting proceeds of $28,603.45 and $28,613.11, respectively, for a total of $57,216.56. Minus fees, the net proceeds were $57,029.59. Getch Decl. ¶ 5 and Exhibit C thereto; Gallippi Decl. ¶ 7 and Exhibit A thereto.

- This transaction register also reflects the daily and ongoing buy-sell nature of BitPay transactions on the SFOX platform. Getch Decl. ¶ 6; Gallippi Decl. ¶ 8.

- Further testimony will establish that BitPay trading accounts are often zeroed out, including in the days that followed the error.

- Akbar Thobani of Ox Labs also sent a communication to Bryan Krohn at BitPay that confirms the same deposits reflected on the July 2015 transactional record. Getch Decl. ¶ 7 and Exhibit C thereto; Kunin Dec. ¶ 3 and Exhibit A thereto. Mr. Thobani's communication also states that the error was discovered as part of a standard account reconciliation process, which the Complaint ¶ 15 alleges was February 16, 2017.

- Mr. Thobani's communication omits the sale of 200 bitcoin on July 10, 2019, although it sites a withdrawal of 200 bitcoin on July 11, 2015. Although this does not align with the 200 erroneously deposited and sold bitcoin, even if it did, the transaction record reflects that the trading price closest in time would be the entry on July 11, 2015 at 8:53, at which the trading price was $295, netting $59,000. Minus fees, that would be is $58,823.00.

15

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

- Given the ongoing buy-sell nature of bitcoins, it is not possible to trace these 200 bitcoins to any particular transaction, Rather, BitPay's only benefit from the erroneously deposited bitcoins is the net $57,029.59 it realized from the sale on July 10, 2015. Getch Decl. ¶ 8; Gallippi Decl. ¶ 9. Regardless, as noted herein, BitPay trading accounts are often zeroed out, including in the days after the error.

Fifth Affirmative Defense (The Remedy for Conversion Has Already Been Tendered):

BitPay intends to present the following evidence establishing all elements of BitPay's fifth affirmative defense:

- On July 12, 2017, BitPay, through counsel, unconditionally sent counsel for Ox Labs a check payable to San Francisco Open Exchange ("SFOX") a check in the amount of $57,216.55.  Kunin Decl. ¶ 2 and Exhibit A thereto.  This payment was unconditional and not tied to any settlement or release.

Sixth Affirmative Defense (Laches, Waiver and/or Estoppel):

BitPay intends to present the following evidence establishing all elements of BitPay's sixth affirmative defense:

- All evidence outlined in section II.C, *supra*.

## G.   Anticipated Evidentiary Issues

Based on conversations with counsel, BitPay does not anticipate evidentiary issues to be raised by BitPay except for matters that are either resolved or may come up at trial, such as what appears to be heavy reliance by Ox Labs on speculation.  Ox Labs has indicated intent to see a bar on testimony of BitPay's good faith, and barring testimony that there is no connection between current holdings and the error.  BitPay's general response is (i) its good faith is critical to showing lack of wrongdoing for purposes of conversation, equitable conduct in the face of Ox Labs

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

seeking equity, and it is simply part of the background, i.e., there was an error, discovered by BitPay, disclosed by BitPay, all while Ox Labs seeks a windfall by taking advantage of the risk and decision-making by BitPay and choosing which trades/non-trades it likes in hind-sight; and (ii) Ox Labs has the burden of proof to connect the error to current assets, all cases cited by Ox Labs are contingent on connection of assets sought to be returned and at least the quality and value of the asset allegedly converted, such that Ox Labs' intended motion/objection seeks to prevent BitPay from putting on its defense to a critical element of the claim while leaving Ox Labs' speculation as the only guidance.

**H.    Issues of Law Germane to the Case**

I.    <u>Conversion</u>

BitPay maintains that an action for conversion, where no wrongful action was committed by the defendant, cannot result in such a manifestly unjust windfall to the plaintiff.   The foundation for a conversion claim rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results; not every failure to deliver property to the rightful owner constitutes a conversion.  *Saptes v. Dameron Hospital Assn*., 114 Cal. App. 4th 208 (2003).  The act of removing personal property from one place to another, without an assertion of ownership or preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute conversion.  *Id*. Specifically, to constitute a conversion, the refusal to deliver must be absolute and amount to a positive denial of the plaintiff's right of possession.  *Kagee v. Bencich*, 27 Cal. App. 2d 469, 81 P.2d 265 (3d Dist. 1938). For example, when a third party demands goods from a person in possession as a bailee or other holder, the latter's qualified refusal is not conversion if such person's real and stated purpose is to secure a reasonable opportunity to inquire into the claimant's right. *Giacomelos v. Bank of America Nat. Trust & Sav. Ass'n*, 237 Cal. App. 2d 99, 46 Cal. Rptr. 612 (1st Dist. 1965).

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

"[M]ere proof of a demand for the property and a refusal to deliver the property does not show conversion, since the defendant may be unable to deliver it, as in the case of its loss or destruction." *Steele v. Marsicano*, 102 Cal. 666, 36 P. 920 (1894); *Kee v. Becker*, 54 Cal. App. 2d 466, 129 P.2d 159 (2d Dist. 1942).  The conversion here was at best on the date Ox Labs credited BitPay. BitPay then paid fair market value of the property since the 200 bitcoins were sold, and therefore their "demand" of the return of 200 bitcoins at a later date was effectively a demand for bitcoins that were not Ox Labs' bitcoins.

Under Cal. Civ. § 3336, the value of the converted property is the appropriate measure of damages, and resort to the alternative occurs only where a determination of damages on the basis of value would be manifestly unjust.  *Krueger v. Bank of America*, 145 Cal.App.3d 204, 215, 193 Cal. Rptr. 322 (1983) .  Accordingly, a person claiming damages under the alternative provision must plead and prove special circumstances that require a measure of damages other than value, and the jury must determine whether it was reasonably foreseeable that special injury or damage would result from the conversion.  *Lueter v. State of Cal*, 115 Cal. Rptr. 2d 68 (Cal. App. 3d 2002).  The courts have held that plaintiffs have a duty to mitigate damages and cannot recover losses they could have avoided through reasonable efforts.  *Bank of Stockton v. Verizon Comm'ns, Inc*., No. 09-15909, 2010 WL 1474053 (9th Cir. April 14, 2010).  Absent compelling evidence of what Ox Labs would have done with the 200 bitcoins it claims it is owed, the Court should fix its worth as the date of conversion.  *Dimick v. Donahue*, Nos. 04-55461, 04-55473, 04-55546, 2006 WL 2139990 (9th Cir. Jan. 30, 2006).  Finally, even if a party may be excused from its own error, the equitable remedy is to return the party that committed the mistake to the position they would have been in, but-for the mistake.  "It is now settled…that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to

18

1  require him to refund." *Midland Nat'l Life Ins. Co. v. Johnson*, Case No. 11-CV-

2  279-LAB-BGS, 2014 WL 12515160 (S.D. Cal. Mar. 27, 2014) at *5 (quoting *Sun'n*

3  *Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 700 (1978)).   An important

4  concept is that bitcoin is subject to trading and changes in value; indeed, this is the

5  reason for SFOX's existence.  It would be unjust to require a "refund" after BitPay

6  has made investment decisions and changed its position in doing so, thus letting Ox

7  Labs obtain a windfall from its own error.

8      In addition, Ox Labs' attempt to argue that under a conversion theory, they

9  would somehow be entitled to the equitable relief of specific property rather than

10  compensatory damages, does not follow California law.  "The distinction between

11  an action for the possession of personal property and one to recover damages for its

12  wrongful conversion is just as broad as that between the common-law actions of

13  detinue and trover.  One lies for the recovery of the property itself, with damages for

14  the wrongful detention of it; the other for the recovery of damages for the wrongful

15  conversion of it." *Peterson v. Sherman*, 68 Cal. App. 2d 706 (1945).  Ox Labs cites

16  to an alternative statute, Cal. Civ. Code § 3379 for the proposition that they should

17  be entitled to the specific property of 200 bitcoin, which is the California statute for

18  replevin, an entirely separate cause of action and remedy.  "In California, courts use

19  claim and delivery which is identical to the federal remedy of replevin.  [F]or claim

20  and delivery, 'it is essential that the specific personal property claimed should be

21  described with a reasonable degree of certainty; and as a rule, money is not the

22  subject of such an action unless it is marked or designated in some manner so as to

23  make it specific as regards its capability of identification." *Tsai v. Wang*, Case No.

24  17-cv-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017) (citing *Hillyer v.*

25  *Eggers*, 32 Cal. App. 764, 766 (1917)).  There is no possibility that Ox Labs could

26  have marked or designated "their specific" 200 bitcoins at issue, and nor does it

27  maintain that it could.  Furthermore, even if such specific identity was not required,

28  the error is still completely disconnected from any ongoing or current holdings by

Russ, August & Kabat

19

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

BitPay, current bitcoin is not of a similar quality or value (*Horn v. Klatt*). Any other conclusion would permit the reversal of the risk of investment and related decision so that Ox Labs can earn a windfall. Indeed, such a result would give Ox Labs carte blanche to decide which of BitPay's trades or non-trades it likes in hindsight, which is exactly what Ox Labs has done by seeking valuations on different dates.  BitPay is unaware of any case precedent that holds in favor of Ox Labs' position, and this includes the cases cited by Ox Labs, which actually support BitPay given the need to connect the conversion to the property sought to be returned, or at least its quality and value.  Therefore, the only correct measure of damages is the value of the bitcoin on the day of the inadvertent crediting error. The value of a bitcoin today is dramatically different than at the time of Ox Labs' error, in addition to the fact that there is no evidence of ongoing benefit to BitPay from the error.

> ### A. *Fallacies in Plaintiff's Position Regarding Conversion and Remedies Therefor*

Given that actual facts and the Court's Order on Summary Judgment, Plaintiff attempts to recast its requested relief as simply seeking a "return" of the 200 bitcoin it erroneously credited to BitPay.  Not a single case cited by Ox Labs supports such relief under the undisputed facts of this lawsuit – for the most part cases cited by Ox Labs support BitPay.  Must of the applicable law is already cited herein, but to address specific issues as cited by Ox Labs:

- "California law defines conversion as 'any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein.'" *Matson v. Vorhariwatt (In re Vorhariwatt)*, No. 17-cv-1255-WQH-MDD, U.S. Dist. LEXIS 208560, at *9-10 (S.D. Cal. Dec. 18, 2017). Here, there is no "wrongful dominion by BitPay.

- Bitcoins are personal property for purposes of California law of conversion.  *See generally Welco Eletronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 209-216 (2014). *Welco* merely stands for the proposition

20

RUSS, AUGUST & KABAT

1   that intangible property can be subject to conversion. At issue was

2   funds charged on a credit card where the value of a dollar is a dollar,

3   but the value of a bitcoin today is not a bitcoin tomorrow. *Welco* does

4   not say that if the property is disposed, that the defendant must still

5   transfer other assets that are of a different value just because it happens

6   to have other similar assets that are of a vastly different value.  Plaintiff

7   also cites *Kremen v. Cohen*, 337 F.3d 1024, 1029-1036 (9th Cir. 2003).

8   *Kremen* involves a specific domain name – identifiable and unique.

9   • *Matson at* *10: "When a person who wrongfully possesses a piece of

10   property fails to comply with a lawful demand for that property, the

11   wrongful possessor's failure to comply with the lawful demand

12   constitutes conversion." *See also, Cerra v. Blackstone*, 172 Cal. App.

13   3d 604, 609 (1985) (citations and quotations marks omitted). As noted,

14   there was no wrongful conduct here, and BitPay cannot return what it

15   no longer has.

16   • "Conversion is a strict liability tort. The foundation of the action rests

17   neither in the knowledge nor the intent of the defendant. Instead, the

18   tort consists in the breach of an absolute duty; the act of conversion

19   itself is tortious. Therefore, questions of the defendant's good faith, lack

20   of knowledge, and motive are ordinarily immaterial." *Los Angeles*

21   *Federal Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387

22   (2012) (emphasis added, citations and internal quotations marks

23   omitted). Madatyan involved a specific and identifiable car, and the

24   award was the insurance proceeds received. BitPay here has paid for

25   the proceeds received from the erroneous bitcoin.

26   • "If all of the other requirements of a conversion are present, it is

27   immaterial that the property in question at the time of the conversion

28   may be in the actual possession of a third party." *Kessinger v. Organic*

21

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*Fertilizers, Inc*., 151 Cal. App. 2d 741, 754 (1957).  This is not an issue here, and damages were the market value regardless.

- "Available remedies for conversion include specific recovery of property with damages for its detention and damages based on the value of the property." *Flores v. California Department of Corrections and Rehabilitation*, 224 Cal. App. 4th 199, 206 (2014), review denied, (Apr. 30, 2014) (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal. App. 2d 128, 132-133 (1965)). These cases merely stand for the proposition that specific identifiable property subject to conversion may be returnable (television and furniture).  Neither case addresses the facts here – that bitcoin were subject to trading.

- "Where a wrongdoer has converted ... personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort)." *Minsky v. L.A.*, 11 Cal. 3d 113, 121 (1974) (citing 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114, p. 983.))   As with other cases, this case merely addresses specific identifiable property in the possession of defendant (property taken upon arrest).

- It is immaterial to a claim of conversion that the property is in the actual possession of a third party. *See Pilch v. Milikin*, 200 Cal. App. 2d 212, 224 (1962); *Kessinger v. Organic Fertilizers, Inc*., 151 Cal. App. 2d 741, 754 (1957); *Brinkley-Douglas Fruit Co. v. Silman*, 33 Cal. App. 643, 651 (1917).  As noted, this is grossly misleading. These cases address whether conversion can be avoided because specific property is in the hands of a third party.  None address complete disposal of the property into the market.

22

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

- Under California law, Ox Labs is entitled to return of its 200 Bitcoins "or other things of the same kind and quality." *Horn v. Klatt*, 65 Cal. App. 2d 510, 521 (1944) . Plaintiff also baldly claims that bitcoins are entirely "fungible" within the meaning of *Horn* and the Restatement of Restitution principles it relies upon. *Horn* has no such conclusion and actually supports BitPay because *Horn* addresses the potential to transfer fungibles that are of the kind and quality.  As noted due to wildly fluctuating values, a bitcoin one day is not the same quality as the next day, which would switch the burden of investment risk and decision-making, allowing a plaintiff to get a windfall. Indeed, such a result would give Ox Labs carte blanche to decide which of BitPay's trades or non-trades it likes in hindsight, which is exactly what Ox Labs has done by seeking valuations on different dates

- Ox Labs claims that BitPay cannot seriously argue that Bitcoins are not fungible assets because it is in the business of assisting clients to accept Bitcoin and other virtual currencies as an alternative to U.S. Dollars and similar currencies. This raises a big issue misunderstood by Ox Labs, which is that BitPay clients want cash, so BitPay must liquidated bitcoins it receives, and the reason the only damage here is what BitPay realized from disposition of the bitcoin that was already paid to Ox Labs.

- Bitcoin is a virtual "currency" – *i.e.*, a medium of exchange –and one Bitcoin is worth the same as any other Bitcoin.  See generally *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228-29 (E.D.N.Y. 2018) (holding that Bitcoin can be regulated as a commodity and citing scholarly articles describing it as a medium of exchange); *Symphony FS, Ltd. v. Thompson*, No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641, at *1 n.1 (E.D. PA. Dec. 20, 2018) ("Bitcoin is the most prominent example of

23

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

cryptocurrency, an electronic form of currency with no tangible format") (citations omitted). Ox Labs misses the point, which is that as a commodity, the erroneous bitcoin were sold, and not traceable to anything held by BitPay. Just because BitPay happens to have other bitcoin is irrelevant because it is of a different character and value.

- Ox Labs claims that no California court has ever held that a defendant found liable for conversion of money can avoid the remedy of specific recovery because it cannot return the exact dollar bills that were converted. To the contrary, although the plaintiff must identify a specific sum capable of identification, it is well settled that "it is not necessary that each coin or bill be earmarked." *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941); see also *Shahood v. Cavin*, 154 Cal. App. 2d 745, 747-48 (1957). First, Ox Labs overlooks the main issue, which is that a dollar is a dollar, but a bitcoin is subject to trading and significant changes in value. BitPay is happy to, and in fact has, paid the dollar value of the erroneous bitcoin on the date of the error. Second, *see Tsai v. Wang*, above, which states that even money must be capable of some identification.

- Ox Labs claims that fact that the value of Bitcoin has fluctuated in the time before and after Bitpay's refusal to "return" the Bitcoins (that BitPay does not have) is immaterial. Not surprisingly, Ox Labs cited nothing in support of this false and inequitable conclusion.

II. Unjust Enrichment

The phrase "unjust enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. *Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448, 9 Cal. Rptr. 2d 774 (1992). "Restitution is not mandated merely because one person has realized a gain at another's expense. Rather, the obligation arises when the

Russ, August & Kabat

24

enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *A.J. Fistes Corp. v. GDL Best Contractors, Inc*., 38 Cal. App. 5th 677 (2019). Restitution has two purposes: to restore the *defrauded* party to the position he would have had absent the *fraud*, and to deny the fraudulent party any benefits, whether or not foreseeable, which derive from his *wrongful* act. *Nelson v. Serwold*, 687 F.2d 278, 281 (9th Cir. 1982) (emphasis added). It is not under dispute that BitPay did not commit any wrongful or fraudulent act. Ox Labs seek restitution for their own mistake; a manifestly unjust "remedy" to right a "wrong" that was not committed.

The Restatement (Third) of Restitution and Unjust Enrichment § 50 (2011) contemplates the exact scenario in this case; namely, the innocent recipient. "An 'innocent recipient' is one who commits no misconduct in the transaction concerned…and who bears no responsibility for the unjust enrichment in question." Most importantly, "[t]he liability in restitution of an innocent recipient of unrequested benefits may not leave the recipient worse off (apart from the costs of litigation) than if the transaction giving rise to the liability had not occurred." *Id.* at § 50(3). As the comments to Restatement § 50 make clear, there is "no reason why the innocent recipient of a benefit, however valuable, should pay anything more. Against an innocent recipient, in short, a transaction by which a claimant confers unrequested benefits may not be profitable to the claimant." The California courts have long relied on the Restatements for guidance. *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc*., 29 Cal. App. 5th 230 (2018). In relying on the Restatement (Third) of Restitution, California courts have recognized that the object of the disgorgement remedy is one of the cornerstones of the law of restitution and unjust enrichment, and the profit for which the *wrongdoer* is liable is to the extent their net increase is attributable to the underlying *wrong*. *Krueger v. Wyeth, Inc.,* 2019 WL 2743942 (C.D. Cal. July 1, 2019) (emphasis added). As stated again and again in case law, *wrongdoing* is a cornerstone of unjust enrichment. The innocent

RUSS, AUGUST & KABAT

25

recipient cannot be held to bear the financial burden of the plaintiff's mistake.  This is exactly what Ox Labs seeks to do, and it is invalid as a matter of law.

## III.  JURY TRIAL (L.R. 16-4.4)

### A.  Issues Triable to the Jury

The following issues are triable to the jury:

1. Whether Ox Labs adequately pled the essential factual elements of conversion;[2]

2. The fair market value of the bitcoin at the time of the alleged conversion;[3]

3. The existence of any special damages resulting from BitPay's conduct;[4] BitPay, however, reserves the right to assert that given the lack of evidence supporting the special damages, that it becomes a question for the Court.

4. Amount of any such damages, should there still be such a question to present to the jury.[5]

### B.  Issues Tried to the Court

The following issues are triable to the Court:

1. Whether Ox Labs failed to state a claim upon which relief can be granted;[6]

---

[2] CACI 2100 (Conversion – Essential Factual Elements)

[3] CACI 2102 (Presumed Measure of Damages for Conversion)

[4] *Id.*; *Krueger v. Bank of America*, 145 Cal. App. 3d 204, 214 (1983) ("A plaintiff seeking recovery under the alternative provision of the statute must therefore plead and prove the existence of 'special circumstances which require a different measure of damages to be applied.'  Having done so, the trier of fact must then determine 'whether it was reasonably foreseeable to a prudent person, having regard for the accompanying circumstances, that injury or damage would likely result from his wrongful act.'")

[5] *Id.*

[6] Fed. R. Civ. Proc. Rule 12(b)(6)

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

RUSS, AUGUST & KABAT

2.     Whether Ox Labs has pled, as a matter of law, theories of recovery of unjust enrichment or restitution;[7]

3.     Whether equitable relief is available in the form of the return of "specific property" or the correct measure is the value of the converted property at the time of conversion, including whether bitcoin, including the specific bitcoin at issue in this case, is capable of a return.[8]

4.     Whether there is a basis to submit the question of damages, at least not without a limiting question to the date of the error, to the jury.

5.     Whether interest should be waived to avoid a windfall to Plaintiff, especially interest accruing after payment on July 12, 2017. *Bank of Stockton v. Verizon Comm'ns, Inc*., No. 09-15909, 2010 WL 1474053 (9th Cir. April 14, 2010) (habiting interest to prevent a windfall to plaintiff).

## IV.     ATTORNEYS' FEES (L.R. 16-4.5)

Neither party is seeking attorneys' fees.

[7] BitPay maintains that Ox Labs has not pled unjust enrichment as a matter of law. "The mere fact that a person obtains a benefit from another is not of itself sufficient to require that person to make restitution therefor. *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,* 94 Cal.App.4th 151, 171 n. 23, 114 Cal.Rptr.2d 109 (2001). Thus, even when a party has received a benefit from another, it is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two parties, the retention of the benefit is unjust. *Id.* This requires wrongful conduct on the part of the party receiving the benefit. *See County of San Bernardino v. Walsh,* 158 Cal.App.4th 533, 542–43, 69 Cal.Rptr.3d 848 (2007).

[8] *Supra*, H(I) (maintaining that Ox Labs has not adequately pled equitable relief of recovery of specific property, as this is not a remedy under §3336).

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,
RUSS AUGUST & KABAT

DATED: October 28, 2019

By: _____*Benjamin T. Wang*_____
Benjamin T. Wang

*Attorneys for Defendant*
BitPay, Inc.

RUSS, AUGUST & KABAT

28

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Unless service is governed by F.R. Civ. P. 4 or L.R. 79-5.3, service with this electronic NEF will constitute service pursuant to the Federal Rules of Civil and Criminal Procedure, and the NEF itself will constitute proof of service for individuals so served.

DATED: October 28, 2019          By:    *Benjamin T. Wang*
                                                   Benjamin T. Wang

29

**DEFENDANT BITPAY, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**