1
2
3
4
5
6
7
8

LEIDER + AYALA-BASS LLP
Philip A. Leider (Cal. Bar No. 229751)
philip@leiderlegal.com
Joren S. Ayala-Bass (Cal. Bar No. 208143)
joren@leiderlegal.com
One Market Plaza, Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone:  415-215-8397
eFax: 510-350-9115

Attorneys for Plaintiff Ox Labs Inc.

9
10
11
12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| OX LABS INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BITPAY, INC., a Delaware Corporation, and Does 1-10,<br><br>Defendants. | Case No. CV 18-5934-MWF(KSx)<br><br>**PLAINTIFF OX LABS INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]**<br><br>Pretrial Conf:  Nov. 18, 2019<br>Trial: Dec. 3, 2019 |

23
24
25
26
27
28

Pursuant to Local Rule 16-4, the Court's Order re Jury Trial (Dkt. 22) ("Pretrial Order"), and the Court Order re BitPay, Inc.'s Motion for Summary Judgment (Dkt. 36) ("MSJ Order"), Plaintiff Ox Labs, Inc. ("Ox Labs") hereby submits this Memorandum of Contentions of Fact and Law for the jury trial scheduled to commence on December 3, 2019, in the above-entitled matter.

## I.  __INTRODUCTION__

The central question in this case is straightforward:  Must the recipient of personal property mistakenly given to it return the property upon demand by the actual owner (as Plaintiff contends) or can the recipient simply send the owner what the recipient unilaterally determines to be the value of the property and refuse to return the property (as Defendant contends)?  California law clearly dictates that the recipient must give the property or its equivalent back to the owner upon demand or face liability for conversion and unjust enrichment.  Moreover, so long as the property remains unreturned, the violation is a *continuing* one, *i.e.*, the statute of limitations does not start to run until the property is returned to the rightful owner.  *See De Vries v. Brumback*, 53 Cal. 2d 643, 646-67 (1960) (In Bank).

In this case, Plaintiff Ox Labs is entitled to the return of 200 Bitcoins it mistakenly credited to Defendant BitPay, Inc. ("BitPay").  The facts supporting liability are not seriously in dispute.  Ox Labs owned the 200 Bitcoins it mistakenly credited to BitPay.  When it learned of the crediting error, Ox Labs demanded that BitPay return 200 Bitcoins.  BitPay refused and instead sent Ox Labs a check for an amount BitPay unilaterally determined was the value of 200 Bitcoins at the time of the crediting error.  Ox Labs did not cash the check and, again, demanded the return of its property.  BitPay obstinately refused without any proper justification.  This lawsuit followed.

Under controlling principles of California law, Ox Labs is entitled to a judgment: (1) restoring 200 Bitcoins to Ox Labs; (2) damages for the wrongful detention of the 200 Bitcoins; and (3) pre-judgment interest.  Alternatively, Ox Labs may recover damages and pre-judgment interest pursuant to California Civil Code section 3336.  Under California law, Ox Labs need not elect which remedy it will receive until after trial.

-2-
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

## II.   <u>STATEMENT OF THE CASE</u>

This is an action for conversion and unjust enrichment brought by Plaintiff Ox Labs against Defendant BitPay.  Ox Labs is a California corporation that provides an advanced platform on which professionals can trade cryptocurrencies, including but not limited to Bitcoins.  The platform is operated by SFOX, a wholly-owned subsidiary of Ox Labs.  This memorandum will refer to Ox Labs and SFOX collectively as "Ox Labs."

BitPay is a Bitcoin payment service provider and processor and, at the time of the relevant events in this case, had been a customer of Ox Labs trading on the SFOX platform for several years.

On July 10, 2015, in connection with a transaction, Ox Labs inadvertently over-credited 200 Bitcoins to BitPay's account.  Neither Ox Labs nor BitPay realized the error at that time.  In late 2016, SFOX became aware that it had 200 fewer Bitcoins in its accounts than it should have had, but, after diligently investigating, it was unable to determine the source of the discrepancy.  At no time prior to February 2017 was Ox Labs aware that BitPay had received the 200 Bitcoins or aware what BitPay had done with the 200 Bitcoins. At some time before February 2017, BitPay's auditors noticed a discrepancy in BitPay's accounts during an account reconciliation process.  After looking further into the matter, BitPay's controller, Kirstie Getch, suspected that the discrepancy may have been due to trading activity with Ox Labs.  Ms. Getch brought the matter to the attention of BitPay's executives, and BitPay's executives reached out to Ox Labs for more information in February of 2017.  Ox Labs looked into the issue and discovered that the error had occurred at the time SFOX was in the processing of switching to a new "wallet" system; a mix-up in Bitcoin addresses had caused the crediting error.

The parties negotiated how best to proceed in the weeks following BitPay's disclosure of the error.  BitPay offered to pay approximately $57,000 to Ox Labs, which it asserted were the proceeds of transactions in which it sold or traded the 200 Bitcoins it received from Ox Labs.  This offer was patently unfair because the Bitcoins at the time had risen in value to more than $200,000.  In addition, BitPay offered no evidence that it had sold the Bitcoins or to whom or when or at what price and, in any event, Ox Labs never consented to BitPay selling them.  Ox Labs proposed various creative business solutions to resolve the impasse, and BitPay rejected each one.  On May 23, 2017, Ox Labs finally demanded that BitPay simply return the 200 Bitcoins, and BitPay unequivocally refused to do so on June 6, 2017.  On June 27, 2017, counsel for BitPay sent a letter to Ox Labs enclosing a check for the approximately $57,000 it contended it owed, which Ox Labs never accepted or cashed.

In August and October of 2017, as a result of what is termed a "hard fork" in the industry, anyone in possession of Bitcoins also received new cryptocurrencies called Bitcoin Gold and Bitcoin Cash in equal amounts.  In other words, by refusing to return 200 Bitcoins to Ox Labs after Ox Labs' lawful demand, BitPay deprived Ox Labs of 200 Bitcoin Gold and 200 Bitcoin Cash it would otherwise have received.  In November of 2018, Bitcoin Cash underwent a further hard fork into Bitcoin SV.  By the time Ox Labs filed the Complaint in this matter, the value of the Bitcoins at issue had risen to $1,324,728.

## III.   CLAIMS AND DEFENSES [L.R. 16-4.1]

This is a civil action for conversion and unjust enrichment related to BitPay's refusal to return 200 Bitcoins that belong to Ox Labs.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the jurisdictional minimum of $75,000.

### A.     OX LABS' CLAIMS AND ELEMENTS [L.R. 16-4.1(a), (b)]

The Complaint states two claims for relief: (1) Conversion, and (2) Unjust Enrichment.  Ox Labs seeks a judgment requiring BitPay to return 200 Bitcoins, 200 Bitcoin Cash, and 200 Bitcoin Gold in addition to pre- and post-judgment interest and costs of suit.  Alternatively, Ox Labs seeks monetary damages.  *See* Complaint [Dkt. 1] ¶ 32 (Prayer for Relief).

### 1.     First Cause of Action: Conversion

Summary:  Ox Labs inadvertently credited BitPay 200 Bitcoins in July of 2015.  Those Bitcoins belonged to Ox Labs; they were given to BitPay by mistake, and they were either kept by BitPay or sold by BitPay without Ox Labs' knowledge or consent.  After Ox Labs learned of the crediting error in February of 2017, Ox Labs demanded that BitPay return 200 Bitcoins to it in May of 2017.  In June of 2017, BitPay refused and thus became liable for converting Ox Labs' property.

Elements:  Ox Labs has the burden of proving:

(1) That it owned or had a right to possess 200 Bitcoins;

(2) That BitPay substantially interfered with Ox Labs' 200 Bitcoins by knowingly or intentionally selling them or refusing to return them after Ox Labs demanded their return;

(3) That Ox Labs did not consent;

(4) That Ox Labs was harmed; and

(5) That BitPay's conduct was a substantial factor in causing Ox Labs' harm. *See* California Civil Jury Instructions ("CACI") 2100 (2019); *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) ("Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully and of course so does an unauthorized sale.") (citations and quotations marks omitted).

### 2.     Second Cause of Action: Unjust Enrichment/Quasi-Contract Based on Mistake – Mistaken Receipt

Summary:  Ox Labs inadvertently credited BitPay 200 Bitcoins in July 2015. Those Bitcoins belonged to Ox Labs and were given to BitPay by mistake.  When Ox Labs was advised in February 2017 that BitPay had received the 200 Bitcoins, Ox Labs demanded that BitPay return 200 Bitcoins, but BitPay refused to return them.

Elements:  Ox Labs has the burden of proving:

(1) That Ox Labs deposited 200 Bitcoins into BitPay's account by mistake;

(2) That BitPay did not have a right to the 200 Bitcoins;

(3)  That Ox Labs asked BitPay, Inc. to return the 200 Bitcoins;

(4)  That BitPay has not returned the 200 Bitcoins to Ox Labs; and

(5)  The amount of money that BitPay must pay, or property that it must return, to Ox Labs to restore Ox Labs to its former position.

*See* CACI 374; *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (unjust enrichment claim will lie when the defendant "has been unjustly conferred a benefit through mistake, fraud, coercion, or request. The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'") (quoting 55 Cal. Jur. 3d Restitution § 2); *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'") (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388-389 (2004)); *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008) ("Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred is an obligation (not a true contract) created by the law

without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.") (internal quotations marks and citation omitted).

## B. EVIDENCE IN SUPPORT OF OX LABS' CLAIMS [L.R. 16-4.1(c)]

### 1. First Cause of Action: Conversion

Ox Labs will introduce the following categories of evidence establishing that BitPay is liable for conversion:

- Evidence that BitPay received 200 Bitcoins from Ox Labs in error in July 2015;
- Evidence that the 200 Bitcoins belonged to Ox Labs and BitPay had no right to the Bitcoins;
- Evidence that when the error was discovered, Ox Labs asked BitPay to return its 200 Bitcoins and BitPay refused to return them;
- Evidence that Ox Labs was harmed by BitPay's refusal to return 200 Bitcoins;
- Evidence that BitPay has at all relevant times possessed 200 Bitcoins to return to Ox Labs; and
- Evidence of the value of 200 Bitcoins (and the hard fork benefits) on various material dates from July 2015 until trial.

### 2. Second Cause of Action: Unjust Enrichment

Ox Labs will introduce the following categories of evidence establishing that BitPay has been unjustly enriched:

- Evidence that when the error was discovered, Ox Labs asked BitPay to return its 200 Bitcoins and BitPay refused to return them;

-7-

- Evidence that Ox Labs was harmed by BitPay's refusal to return 200 Bitcoins;
- Evidence that BitPay cannot prove in which transactions it allegedly sold Ox Labs' Bitcoins or for how much or whether the proceeds were invested in additional Bitcoins;
- Evidence that BitPay has 200 Bitcoins to return to Ox Labs;
- Evidence of the value of 200 Bitcoins (and the hard fork benefits) on various material dates from July 2015 until trial.

## C.  SUMMARY OF BITPAY'S AFFIRMATIVE DEFENSES [L.R. 16-4.1(d), (e)]

As a preliminary matter, BitPay asserts approximately ten "affirmative defenses," categorized into 6 numbered paragraphs, many of which are not proper affirmative defenses.  *See* Defendant BitPay's Answer and Affirmative Defenses [Dkt. 13] at 5.  Several of these affirmative defenses simply purport to negate elements of Ox Lab's claims for relief, are arguments of law about the claims, or are otherwise encompassed by other affirmative defenses.  *See, e.g.*, Affirmative Defense No. 2. ("Unavailability of a claim for unjust enrichment where there is an adequate remedy at law."); No. 4 ("BitPay no longer has the bitcoin at issue to return."); No. 5 ("California Code 3336 . . . states the remedy for conversion."); No. 3 ("BitPay unconditionally tendered 100% of the profit it earned as a result of Ox Labs' error").  Because Ox Labs must establish elements of its causes of action to prove its claims, these are not proper affirmative defenses.  Moreover, BitPay has not provided counsel for Ox Labs with proposed jury instructions for any of these purported affirmative defenses, save the statute of limitations, as required by the Court's Pretrial Order and the Civil Local Rules.  Finally, BitPay's Affirmative

Defense No. 1 ("Failure to State a Claim for Relief") is not an affirmative defense at all, and, in any event, the time for pleading motions has long since passed.

The only affirmative defense BitPay will apparently attempt to prove is its statute of limitations defense, which wholly lacks merit under the circumstances of this case.

### 1.   Affirmative Defense: Statute of Limitations

Summary:  BitPay asserts that a two-year statute of limitations applies to Ox Labs' claim for conversion on the ground that Bitcoin is intangible property.

Elements:  If the Court determines that the conversion claim is subject to a two-year statute of limitations, then BitPay must establish: (1) That Ox Labs' cause of action accrued before July 6, 2016 (*i.e.*, two years before the filing of the Complaint).  If BitPay establishes that fact, then Ox Labs must establish that before July 6, 2016, it did not discover and did not know of facts that would have caused a reasonable person to suspect BitPay's unauthorized sale of the 200 Bitcoins, and Ox Labs was not negligent in failing to make the discovery prior to July 6, 2016. *See Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 701–702 (1978).

### D.   EVIDENCE IN OPPOSITION TO BITPAY'S AFFIRMATIVE DEFENSES [L.R. 16-4.1(f)]

### 1.   Affirmative Defense: Statute of Limitations

Ox Labs will present the following categories of evidence:

- Testimony from Ox Labs employees that Ox Labs did not know of the error before February 2017, when BitPay alerted Ox Labs that it had received 200 more Bitcoins than it should have received in its accounts from transactions dating back to July 2015;

- Testimony from Ox Labs employees that Ox Labs maintained reasonable business practices with respect to monitoring its accounts and investigating discrepancies;

-9-

- Testimony from Ox Labs employees that Ox Labs' reasonable business practices did not lead, and could not have led, it to discover that the 200 Bitcoin discrepancy was attributable to BitPay or that BitPay had sold or otherwise disposed of the 200 Bitcoins, before July 6, 2016;

- Testimony and documents demonstrating that BitPay refused to return Ox Labs' property in June 2017 and has refused continually since then, *i.e.*, the claim for conversion still has not accrued pursuant to *De Vries v. Brumback*, 53 Cal. 2d 643, 646-67 (1960) (In Bank) and its progeny.

## 2. Questions of Law Regarding Statute of Limitations

Continuing Violation: Neither the Court nor a jury need embark upon the cumbersome and complex statute of limitations analysis that BitPay has proposed. As a threshold matter, California law, as interpreted by various federal courts, makes clear that the statute of limitations on a claim for conversion *does not even start to run* if the plaintiff has demanded return of the property at issue and the defendant has not returned it.  As the California Supreme Court has decisively stated:  "Conversion is act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession.  Furthermore, *it is a continuing tort—as long as person entitled to use and possession of his property is deprived thereof*; it does not necessarily end when original wrongdoer transfers physical possession to another." *De Vries v. Brumback*, 53 Cal. 2d 643, 646-67 (1960) (In Bank) (emphasis added).

Federal courts have repeatedly followed *De Vries* in holding that refusal to return property after a lawful demand prolongs the violation until the property is actually returned:

When a person who wrongfully possesses a piece of property fails to comply with a lawful demand for that property, the wrongful possessor's

-10-

1
2
3
4

> failure to comply with the lawful demand constitutes conversion.  The conversion does not end at the moment a lawful demand is refused, it continues as long as the person entitled to the use and possession of his property is deprived thereof.  The conversion continues from the time the first lawful demand is refused until the lawful owner regains possession of his property.

5   *Matson v. Vorhariwatt* (*In re Vorhariwatt*), 17-cv-1255-WQH-MDD, 2017 U.S.

6   Dist. LEXIS 208560, at *9-10 (S.D. Cal. Dec. 18, 2017) (citations and internal

7   punctuation omitted).  *See also Hullinger v. Anand*, No. CV 15-07185 SJO (FFMx),

8   2016 U.S. Dist. LEXIS 111918, at *10 (C.D. Cal. Aug. 11, 2016) ("California law

9   treats conversion, fraud, and constructive fraud similarly with respect to the theory

10  of ongoing liability."); *AB Inv. LLC v. Regal One Corp.,* No. CV 09-02983-RGK

11  (FFMx), 2009 U.S. Dist. LEXIS 135956, at *3-4 (C.D. Cal. Dec. 22, 2009)

12  ("[C]onversion is a continuing tort as long as the person entitled to the use and

13  possession of his property is deprived thereof and does not necessarily end when

14  the original wrongdoer transfers physical possession to another.") (citations and

15  internal punctuation omitted).

16       In this case, it is undisputed that Ox Labs demanded the return of 200

17  Bitcoins on May 27, 2017.  BitPay refused that demand on June 6, 2017, and it has

18  not returned possession of the property to this day.  Accordingly, *De Vries* and its

19  progeny dictate that the violation continues and, as a result, the statute of

20  limitations has not even begun to run in this matter.  Even if the continuing

21  violation doctrine did not apply, however, the date of conversion in this matter

22  would be the date on which BitPay refused to return the property, *i.e.*, June 6, 2017,

23  which is less than either two or three years before the filing of the Complaint on

24  July 6, 2018.  *See Bufano v. San Francisco*, 233 Cal. App. 2d 61, 70 (1965)

25  ("Where an original taking is wrongful, the bar of the statute runs from the time of

26  the unlawful taking, but where the original taking is lawful, *the statute is not set in*

27  *motion until the return of the property has been demanded and refused* or until a

28  repudiation of the owner's title is clearly and unequivocally brought to his

-11-

1    attention.") (emphasis added).  The statute of limitations defense therefore fails as a

2    matter of law.

3            The Discovery Rule

4            The Court has already held that California's discovery rule -- which delays

5    the accrual of a cause of action until the plaintiff becomes aware of facts giving rise

6    to the claim -- applies to both the conversion and unjust enrichment causes of

7    action.  *See* MSJ Order at 7 (applying discovery rule to conversion claim and citing

8    *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 349-350 (2008));

9    MSJ order at 8 (applying discovery rule to unjust enrichment claim and quoting

10   *Dintino*, 167 Cal. App. 4th at 350 ["The Legislature has expressly provided for

11   application of the discovery rule to causes of action based on mistake, such as

12   Bank's unjust enrichment cause of action in this case."]).  The Court was correct in

13   both instances and should instruct the jury accordingly, assuming that the

14   continuing violation doctrine does not dispose of the defense, as demonstrated

15   above.  BitPay's cited authority generally holding that the statute of limitations

16   begins to run on the date the wrongful act or omission occurred, regardless of the

17   plaintiff's knowledge, are inapposite because those cases involved a wrongful

18   disposition of property (e.g., theft) whereas in this case BitPay did not obtain the

19   property wrongfully but instead wrongfully refused to return the property after a

20   lawful demand.  That refusal took place well within either a two or three statute of

21   limitations, and there is no question that Ox Labs could not have learned of the

22   refusal any earlier.

23           Tangible v. Intangible Property Rights: The statute of limitations for a claim

24   for conversion is generally three years.  Cal. Code Civ. Proc. § 338(c).  However,

25   BitPay contends that the conversion of "intangible" property is governed by a two-

26   year statute of limitations.  *See* Cal. Code Civ. Proc § 339; *OC Kickboxing & Mixed*

27

28

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

*Martial Arts, Inc. v. Warrior Arts All., Inc.*, No. SACV19-0004-DOC (DFMx), 2019 WL 3210093, at *4 (C.D. Cal. May 3, 2019).

No controlling authority addresses the issue of whether Bitcoin is tangible or intangible property for purposes of California law of conversion.  However, the reasoning of the most germane cases, *Fabricon Prods. v. United California Bank*, 265 Cal. App. 2d 113 (1968), and *Italiani v. Metro-Goldwyn-Mayer Corp.*, 45 Cal. App. 2d 464 (1941), demonstrates that Bitcoin is not the type of intangible property subject to the narrower two-year statute of limitations.

In *Fabricon*, the Court of Appeal held that a claim for specific recovery of personal property (a check for money in that instance) is subject to the three-year statute of limitations of Code of Civil Procedure section 338(c) (formerly Code of Civil Procedure section 388, subdivision 3).  *See* 265 Cal. App. 2d at 117.  The Court distinguished the case at bar from those involving "intangible property rights" such as *Italiani*, which concerned "plagiarism of a motion picture scenario." *Id.* (citing *Italiani*, 45 Cal. App. 2d at 466-67) (two-year statute of limitations under § 339 applies to "intangible incorporeal rights [that] exist separate and apart from the property in the paper on which it is written, or the physical substance in which it is embodied.")).

In *Italiani*, a plaintiff wrote an idea for a movie scenario on a piece of paper, sent it to the defendant, and later accused the defendant of stealing his idea and using it for a movie.  The appellate court trained its focus on the fact that the plaintiff was seeking compensation for the "idea" that was stolen (*i.e.*, the incorporeal right) rather than the paper on which the idea was written, and thus the two-year statute of limitations for intangible property applied rather than the usual three-year statute.  That pivotal distinction is inapplicable in the instant case because Bitcoin (*i.e.*, a commodity with hard monetary value) is not merely an "idea" divorceable from the paper on which it is written or, rather, the blockchain

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

on which it is recorded.  This is why the few courts to have considered the nature of Bitcoins have concluded that they are commodities subject to regulation by the Commodities Futures Trading Commission and other federal agencies.  *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228-29 (E.D.N.Y. 2018) (Bitcoin can be regulated as a commodity by the CFTC or as a security by other regulatory agencies); *id.* at 218 ("Virtual currencies are generally defined as 'digital assets used as a medium of exchange.'. . .  They are often described as 'cryptocurrencies' because they use 'cryptographic protocols to secure transactions . . . recorded on publicly available decentralized ledgers,' called 'blockchains.'. . . They have some characteristics of government paper currency, commodities, and securities. . . 'It is a lot like gold, in fact. The difference [] is that it is digital rather than a heavy, unwieldy object. That means that it could serve the same purposes as gold in terms of a currency, but much more efficiently because it does not have any mass and can be sent easily from place to place.'") (citations omitted).

As *Italiani* explained:

> [CCP § 338] seeks to prescribe a [three-year] statute of limitation for those actions which may be classed broadly under the head of the common law actions of trover, detinue and replevin – and with the latter's statutory counterpart of claim and delivery.  All of these actions involve the concept of interference with the possession of, or damage to, some specific tangible property, and are not concerned with intangible or incorporeal rights which may exist in connection with, *or entirely apart from any particular piece of physical property*.

*Italiani*, 45 Cal. App. 2d at 467 (emphasis added).  Bitcoins do not exist in some detached realm of ideas.  They are digital currencies with a sophisticated system of digital recording and verification.  *See Symphony FS, Ltd. v. Thompson*, No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641, at *1 n.1 (E.D. Pa. Dec. 20, 2018) (Bitcoin "operates using blockchain technology, a shared public ledger reinforced by cryptography which records all confirmed transactions. . . .  Bitcoin wallets keep a secret piece of data called a private key or seed, which is used to sign

-14-

transactions. This signature both prevents the transaction from being altered once it has occurred and allows the transacting parties to remain anonymous, as only the signatures are recorded in the public log.") (citation omitted).  Accordingly, conversion of Bitcoins should be subject to the three-year statute of limitations under Civil Procedure Code section 338(c) and not the two-year statute of limitations of Civil Procedure Code section 339 applicable only to intangible property such as movie ideas.

### D.    THIRD PARTY ISSUES [L.R. 16-4.1(g)]

There are no third-parties or third-party issues in this matter.

### E.    ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]

Ox Labs is concurrently filing Motions *in Limine*.  As reflected in those Motions, Ox Labs contends that the following evidence is inadmissible:

- Evidence (documentary or testimonial) regarding settlement communications between the parties leading up to and during the pendency of litigation.  These communications are all subject to Federal Rule of Evidence 408, which makes such communications inadmissible to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction. *Fed. R. Evid.* 408 (Compromise Offers and Negotiations).  To the extent non-settlement communications are reflected in the same documents and settlement communications, the inadmissible portions should be redacted.

- Testimony regarding BitPay's "innocence" or "good faith" regarding its intent to convert, keep, or sell Ox Labs' Bitcoins.  Conversion is a strict liability tort and BitPay's state of mind is irrelevant. *See Los Angeles Federal Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012) ("Conversion is a strict liability tort. The foundation of

-15-

the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial.")

- Evidence related to BitPay no longer possessing the 200 Bitcoins at issue and the contention that BitPay can no longer return the Bitcoins. *See, e.g., Pilch v. Milikin*, 200 Cal. App. 2d 212, 224 (1962) ("[I]t is immaterial that the property in question may be in the actual possession of a third party."); *Kessinger v. Organic Fertilizers, Inc.*, 151 Cal. App. 2d 741, 754 (1957) (same).

## F.   IDENTIFIED ISSUES OF LAW [L.R. 16-4.1(i)]

Several of the issues to be tried are similar to the issues heard on BitPay's Motion for Summary Judgment, which was denied in its entirety.  The remaining issues support Ox Labs' position.  Ox Labs anticipates the following issues of law:

*First*, whether BitPay is liable for conversion based on its refusal to return 200 Bitcoins that Ox Labs owned and had the legal right to possess.  Ox Labs believes that the factual basis for this claim has already been established via admissions made by BitPay throughout the course of litigation.  BitPay's contention that it is an "innocent" recipient and "did nothing wrongful" to support a conversion claim fail to recognize that, under California law, the recipient of mistakenly given property is obligated to return the property upon rightful demand.  There is nothing "innocent" about keeping someone's property when they ask for it back.  *See Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) ("Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully") (citations omitted).  Moreover, even

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

if BitPay's contention that it sold the Bitcoins at issue and "zeroed out" its holdings were true, a claim unsupported by any evidence produced in this litigation, then it is undisputed that such sale was "unauthorized" and therefore also a conversion. *See id.* ("unauthorized sale" of personal property obtained lawfully also constitutes conversion) (citing *Wade v. Markwell & Co.*,118 Cal. App. 2d 410, 418 (1953); *Alonso v.* Badger, 58 Cal. App. 2d 752, 758 (1943)).

*Second*, the available remedies for BitPay's conversion of Ox Labs' 200 Bitcoins.  Ox Labs seeks specific recovery of its property for conversion. *See Minsky v. L.A.*, 11 Cal. 3d 113, 121 (1974) ("Where a wrongdoer has converted . . . personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort).") (*citing* 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114, p. 983) (emphasis added);  *Flores v. Cal. Dep't of Corrections and Rehabilitation*, 224 Cal. App. 4th 199, 206 (2014), *review denied*, (Apr. 30, 2014) ("Available remedies for conversion include specific recovery of property with damages for its detention and damages based on the value of the property.") (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal. App. 2d 128, 132-133 (1965)).

BitPay contends that the sole remedy for conversion is damages based on the market value of the Bitcoins on July 10, 2015, the date of the crediting error. However, Ox Labs contends that § 3336 sets forth the compensatory damages remedy for conversion, whereas Ox Labs seeks, in the first instance, the remedy of specific recovery, as authorized by the authority cited above.  In the alternative, Ox Labs seeks damages under § 3336.  Even under the standard measure of damages allowed by that statute, Ox Labs contends that the date of conversion would be the date that BitPay refused to return the property after a lawful demand.  That date is

-17-

*not* July 10, 2015, when the property first passed into BitPay's possession, but rather June 6, 2017, when BitPay refused to return 200 Bitcoins to Ox Labs. *See Bufano v. San Francisco*, 233 Cal. App. 2d 61, 70 (1965) ("Where an original taking is wrongful, the bar of the statute runs from the time of the unlawful taking, but where the original taking is lawful, *the statute is not set in motion until the return of the property has been demanded and refused* or until a repudiation of the owner's title is clearly and unequivocally brought to his attention.") (emphasis added).

BitPay further contends that it no longer possesses the Bitcoins that it was erroneously credited and therefore cannot be subject to an order of restitution or specific recovery. This contention is fallacious. *See, e.g., Pilch v. Milikin*, 200 Cal. App. 2d 212, 224 (1962) ("[I]t is immaterial that the property in question may be in the actual possession of a third party."); *Kessinger v. Organic Fertilizers, Inc.*, 151 Cal. App. 2d 741, 754 (1957) (same).

BitPay's repeated assertion that Ox Labs has failed to establish any "connection" between its current Bitcoin holdings and the violation at issue completely misses the point; once Ox Labs establishes that it mistakenly gave the Bitcoins to BitPay and BitPay refused to return them upon demand, facts that are undisputed here, then liability is established pursuant to the case cited above. The only question remaining is what BitPay must provide to redress the wrong. Despite its protestations to the contrary, BitPay *can be* ordered to restore 200 Bitcoins to Ox Labs without them being the precise Bitcoins BitPay received – otherwise a recipient of mistakenly given property could simply sell the property immediately and, when subject to a demand, claim it cannot be returned (if the value rose) or return an identical item (if the value declined). The law does not enable such gamesmanship. Similarly, the weight of modern authority allowing the return of money mistakenly provided does not require that the exact same dollar bills to be

-18-

restored be traced back to the transaction.  *See Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 209 (2014) ("Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or bill be earmarked.") (citing *Haigler v. Donnelly* 18 Cal. 2d 674, 681 (1941)).

BitPay's contention that it can only be ordered to restore the exact same property that Ox Labs mistakenly provided is incorrect for a further reason. Bitcoins are "fungible" – *i.e.*, they are a medium of exchange – and one Bitcoin is the same as any other in all material respects.  *See Horn v. Klatt*, 65 Cal. App. 2d 510, 521 (1944) ("[W]here the subject matter consists of chattels or choses in action which are identical in kind and quality with other chattels or choses in action, restitution may be made by giving other things of the same kind and quality.").  No court would bar an action for restitution under the Unfair Competition Law, Business & Professions Code § 17200, because the defendant no longer possessed the precise dollar bills it wrongly acquired.  Further, it makes no difference whether the value of those dollars has risen or fallen with respect to other currencies – Courts simply award the same amount of dollars.  BitPay has conceded in discovery that it had more than 200 Bitcoins at every moment relevant to this case that it could restore to Ox Labs.  It should not be immune from the remedies of restitution and specific recovery simply because it sold the Bitcoins Ox Labs provided and bought others with the proceeds or because the value of the Bitcoins as measured against a different currency have fluctuated.

*Third*, BitPay asserts that the conversion cause of action is barred by a two-year statute of limitations because Bitcoins should be considered intangible property within the meaning of Civil Procedure Code § 339.  Ox Labs contends that, per the California Supreme Court's opinion in *De Vries*, discussed above, the statute of limitations has not even started to run in this matter.  Even if that is not the case, the statute of limitations started to run upon BitPay's refusal to return the

property, not when it first received it.  *See Bufano v. San Francisco*, 233 Cal. App. 2d 61, 70 (1965) ("Where an original taking is wrongful, the bar of the statute runs from the time of the unlawful taking, but where the original taking is lawful, *the statute is not set in motion until the return of the property has been demanded and refused* or until a repudiation of the owner's title is clearly and unequivocally brought to his attention.") (emphasis added).  Finally, the normal three-year statute of limitations for conversion claims should apply pursuant to § 338(c), as demonstrated *supra* at pp.12-15.

*Fourth*, whether Ox Labs is entitled to pursue "special damages" under Cal. Civ. Code § 3336.  If the jury determines that an award of the value of the property at the time of conversion plus interest would be "manifestly unjust," it may award damages under the second prong of § 3336.  *Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (1965).  "[W]here proof establishes an injury beyond that which would be adequately compensated by the value of the property and interest, the court may award such amounts as will indemnify for all proximate reasonable loss caused by the wrongful act." *Lint v. Chisholm*, 121 Cal. App. 3d 615, 624–625 (1981) (internal citations omitted).  "In exceptional circumstances, to avoid injustice, loss of profits may be the measure."  *Newhart v. Pierce*, 254 Cal. App. 2d 783, 794 (1967) (internal citation omitted).

Here, due to the sharp rise in value of Bitcoins and the hard fork benefits that followed after BitPay refused to return Ox Labs' Bitcoins, Ox Labs lost far more than the fair market value of the Bitcoins on the date when BitPay asserts it sold them.  As the citations above demonstrate, when a plaintiff offers evidence that he or she lost profits in excess of the value-on-date-of-conversion-plus-interest measure, the "manifest injustice" standard has been satisfied.  *See Myers v. Stephens*, *supra*, 233 Cal. App. 2d at 119-120 (plaintiff offered evidence of lost profits and appellate court affirmed, stating "[w]e are satisfied that there were

special circumstances in the present case which required a different measure of damages to be applied than that provided under the first alternative"); *see also Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1936) (special circumstances required different measure of damages where plaintiff testified that he did not intend to sell stock at issue and the price rose thereafter); *Ruiz v. Bank of Am. Nat'l Tr. & Sav. Assoc.*, 135 Cal. App. 2d Supp. 860, 862 (1955) (applying second prong of § 3336 where circumstances indicated that plaintiff had relied on directions of defendant not to make required payments for automobile and defendant sold it).

Finally, as a general matter under California law, "[t]he selection of which measure of damages to apply is within the sound discretion of the trier of fact." *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 874 (1990).

*Fifth*, BitPay contends that Ox Labs cannot pursue equitable relief (*i.e.*, restitution or specific recovery of property) when it has an adequate remedy at law (*i.e.,* damages under Civil Code § 3336). This argument is flatly contradicted by controlling California cases. "Where a wrongdoer has converted . . . personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort)." *Minsky v. L.A.,* 11 Cal. 3d 113, 121 (1974) (citing 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114, p. 983.)); *See also Flores v. California Department of Corrections and Rehabilitation*, 224 Cal. App. 4th 199, 206 (2014), *review denied*, (Apr. 30, 2014) ("Available remedies for conversion include specific recovery of property with damages for its detention and damages based on the value of the property.") (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal. App. 2d 128, 132-133 (1965)).

Although a conversion plaintiff must eventually choose which remedy to pursue, that determination need not be made before the case is tried. "Ordinarily a

plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment." *Roam v. Koop*, 41 Cal. App. 3d 1035, 1039 (1974); *see also Jahn v. Brickey*, 168 Cal. App. 3d 399, 406 (1985) (rejecting argument that election of remedies must be made prior to submission of case to jury).

*Sixth*, if Ox Labs prevails on either its claim for conversion or unjust enrichment, it will be entitled to prejudgment interest.  Whichever date is established for the conversion, Ox Labs will be entitled to an award of prejudgment interest of 7% per annum from that date to the date when judgment is entered.  *See Moreno v. Greenwood Auto Ctr.*, 91 Cal. App. 4th 201, 209 (2001); *Pacific-Southern Mortg. Trust Co. v. Ins. Co. of N Am.*, 166 Cal. App. 3d 703, 716 (1985); *State Farm Mut. Auto. Ins. Co. v. Rodriguez (In re Rodriguez)*, 568 B.R. 328, 347 (2007).  BitPay appears to contend that prejudgment interest cannot be awarded because BitPay "tendered" an amount that it deemed sufficient to redress the harm at issue here.  That assertion is undeniably incorrect given controlling U.S. Supreme Court authority holding that an unaccepted offer is a "legal nullity." *Campbell-Ewald Co. v. Gomez*, 577 U.S. __, 136 S. Ct. 663, 670 (2016).

### G.    BIFURCATION OF ISSUES [L.R. 16-4.3]

There are no issues that need bifurcation in this matter.

### H.    JURY TRIAL [L.R. 16-4.4]

Both parties made timely demands for jury trial.  The following issues are triable to the jury:

> **1.**    Conversion under California law.  *See* CACI 2100 et seq.; *Union Oil Co. v. Hane*, 27 Cal. App. 2d 106 (1938) (reversing judgment on conversion claim on ground that plaintiff was entitled to a trial by jury and had not waived the right by filing the jury trial demand too late).

-22-

**2.** Unjust enrichment/quasi-contract under California law. *See* CACI 347; *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) ("For example, restitution may be awarded. . . where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election referred to at common law as 'waiving the tort and suing in assumpsit'). . . . In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment.") (citations and internal quotation marks omitted); *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal.App.4th 333, 346 (2008) ("Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred is an obligation (not a true contract) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.") (internal quotations marks and citation omitted); *Jogani v. Superior Court*, 165 Cal. App. 4th 901 (2008) (claims formerly sounding in assumpsit, such as those based on quasi-contract, are actions at law with a right to trial by jury).

**3.** BitPay's statute of limitations affirmative defense. *See Jefferson v. County of Kern*, 98 Cal. App. 4th 606, 619 (2002) (plaintiff has right to jury trial on facts supporting statute of limitations defense).

**I.     ATTORNEYS' FEES [L.R. 16-4.5]**

No party is seeking attorneys' fees.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## J.    ABANDONMENT OF ISSUES [L.R. 16-4.6]

As discussed above, BitPay has abandoned each of its affirmative defenses with the exception of the statute of limitations.  Both Ox Labs and BitPay have abandoned their claim for attorneys' fees.  Ox Labs has abandoned its claim for punitive damages.

Dated:  October 28, 2019                Respectfully Submitted,

LEIDER + AYALA-BASS LLP

By:    */s/ Philip. A. Leider*

Philip A. Leider

Attorneys for Ox Labs Inc.

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]
Case No. CV 18-5934-MWF(KSx)

# IV.   <u>CERTIFICATE OF SERVICE</u>

I certify that counsel of record, listed below, is being served on October 28, 2019, with a copy of this document through the CM/ECF Filing System as identified on the Notice of Electronic Filing dated October 28, 2019.

<u>/s/ <i>Anahit Samarjian</i></u>
Anahit Samarjian

Benjamin T. Wang
bwang@raklaw.com
James Tsuei
jtsuei@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard,12th Floor
Los Angeles, California 90025

Lawrence H. Kunin
lhk@mmmlaw.com
MORRIS, MANNING & MARTIN, L.L.P.
1600 Atlanta Financial Center
3343 Peachtree Road N.E.
Atlanta, Georgia 30326