RUSS, AUGUST & KABAT
Benjamin T. Wang (SBN 228712)
bwang@raklaw.com
James S. Tsuei (SBN 285530)
jtsuei@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Telephone:   (310) 826-7474
Facsimile:    (310) 826-6991

MORRIS, MANNING & MARTIN, L.L.P.
Lawrence H. Kunin, Esq. (*pro hac vice*)
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Facsimile: (404) 365-9532

*Attorneys for Defendant*
BITPAY, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| OX LABS, INC.,<br><br>                              *Plaintiff*,<br><br>vs.<br><br>BITPAY, INC. and Does 1-10,<br><br>                              *Defendants*. | Case No. 2:18-cv-05934-MWF-KS<br><br>**DEFENDANT BITPAY, INC.'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE BITPAY FROM ARGUING THAT IT NO LONGER HAS PLAINTIFF'S PROPERTY AND THEREFORE CANNOT RETURN IT**<br><br>Pretrial Conf: November 18, 2019<br>Time: 11:00 A.M.<br>Dept.: 5A<br>Trial: December 3, 2019 |

RUSS, AUGUST & KABAT

# MEMORANDUM OF POINTS AND AUTHORITIES:

## I.   INTRODUCTION

Plaintiff Ox Labs' Motion in Limine No. 3 seeks to exclude critical evidence of the central element of this lawsuit – Ox Labs seeks restitution of 200 erroneously-credited bitcoins, yet desires to prevent any evidence that BitPay no longer possesses such bitcoins, or any bitcoins connected to the Ox Labs error.  In addition to the fact that this lawsuit should not exist in the first place, the holding Ox Labs seeks would be unprecedented in that it would prevent Ox Labs itself from proving a critical element that BitPay still has erroneously credited property to receive in restitution, as well as prevent BitPay from putting forth evidence rebutting such a critical element of restitution.

This lawsuit is about an error by Ox Labs. Not knowing of the error, BitPay proceeded to execute trades of the erroneously credited bitcoins, including trading the volumes connected to the erroneous credit down to zero.  Unlike every case cited by Ox Labs in which the issue was return of a specific piece of identifiable property, or even a commodity that it simply stored in a vault, the issue here is a credit for a commodity that was subject to immediate and frequent trading, and trading decisions.  In other words, Ox Labs seeks to use its own error to switch the burden of investment risk and decision-making to BitPay, thus earning a windfall because the price of bitcoins happened to increase and because BitPay happens to have other bitcoins that are not connected to the error.  Ox Labs now seeks a Court ruling validating its windfall without any evidence demonstrating the windfall and unavailability and inappropriate nature of restitution.

RUSS, AUGUST & KABAT

## II.   **ARGUMENT**

### A.   **Ox Labs Points To No Specific Evidence – Indeed, It Took No Depositions – That May Be Subject To A Motion In Limine**

As stated in *Mims v. Fed. Express Corp.*, No. CV 13-03947-AB (SSX), 2015 WL 12711651, at *1 (C.D. Cal. Jan. 15, 2015):

> Motions in limine afford the court and counsel the opportunity to give more deliberate consideration to specific objections to specific evidence. *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). They will not lie to exclude broad categories of evidence. S*ee Liberal v. Estrada, No. C 07-0024 SBA*, 2011 WL 3956068, at *5. As one California court has succinctly observed, unless the motion identifies specific evidence it seeks to exclude and the specific reasons to exclude it, the court would be forced to "rule in a vacuum" on the admissibility of evidence. *Kelly v. New West Federal Savings*, 49 Cal.App.4th 659, 670, 56 Cal.Rptr.2d 803 (Cal. Ct. App. 1996). If granted, such amorphous motions would "leav[e] the court and the parties to guess what [evidence] during trial may be included within the scope of the ruling." *Id.*

*See also Vago v. Cty. of Los Angeles*, No. CV 13-868 DMG (RZX), 2015 WL 13697386, at *4 (C.D. Cal. Aug. 7, 2015):

> Motions in limine should         refer        to specific evidence. (See Scheduling and Case Management Order at 7 ("Motions in limine should  address specific issues  (i.e., not "to exclude all hearsay, etc.).") [Doc. # 22].) The Court declines to consider        blanket        objections.        Counsel        may raise specific objections at trial.

Here, Ox Labs has not only failed to cite specific evidence it seeks to exclude, but it took no depositions and is thus not in a position to cite specific evidence to exclude.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Bitpay's Possession, Or Lack Thereof, Of Ox Lab's Bitcoins Is Relevant To The Multiple Theories Of Recovery Ox Labs Is Attempting To Argue**

Ox Labs is seeking to have it both ways in this case.  It is arguing that BitPay committed conversion, and California law is clear that the remedy is the value of the property at the time of the taking where there is no manifestly unjust action on the part of a defendant to justify alternative recovery under the statute.  Cal. Civ. Code § 3336.  As that remedy would involve return of the proceeds from the sale of Ox Lab's 200 bitcoins in 2015, rather than Ox Labs profiting from a million plus dollar increase in value, Ox Labs is also arguing that under an unjust enrichment or restitution theory (that statutorily requires *affirmative wrongdoing* or *fraud* on the part of a defendant) it should be entitled to the return of the specific 200 bitcoins that were credited BitPay.  Yet, since it is now undisputed by both parties that there is no way BitPay could identify with specificity which exact 200 bitcoins belonged to Ox Labs, Ox Labs is now arguing that they should be entitled to the return of any 200 bitcoins in BitPay's possession and that the evidence of BitPay's previous sale of Ox Lab's 200 bitcoins is wholly irrelevant to the case at hand.

However, at trial, BitPay will be able to prove that whether deposits and sales are connected or not, the erroneous bitcoin was subject to a series of trades that hit zero – completely disconnecting the error to any ongoing holdings bitcoin holdings by BitPay.  Ox Labs is somehow trying to analogize bitcoin to be both specific, tangible property with definable properties, but also fungible and just a form of currency or medium of exchange that does not require identification.  As a matter of law, Ox Labs cannot have it both ways. Unlike specifically identifiable property or fungible items that do not change value, bitcoin is subject to ongoing trading and changes in value – and if Ox Labs were correct, it would obtain a windfall from its own error by switching the burden of investment risk and decisions to innocent BitPay.  It appears that Ox Labs is trying to say that because BitPay happens to have other bitcoin holdings that are completely disconnected from the error, restitution is

1    available and BitPay should be prevented from showing the same.  Not a single case

2    cited by Ox Labs stands for this proposition.

3        In pleading conversion (which, as stated, the relief is the value of the property

4    at the time of the conversion), Ox Labs is attempting to define bitcoin as tangible

5    property, with inherent and intrinsic properties in their physical form, despite the

6    fact that bitcoins do not actually exist physically.  In *Ananda Church of Self-*

7    *Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1282 (3d Cal.

8    2002) a California appeals court stated the "tangibility requirement" of conversion.

9    While conversion actions have since been extended by the courts to apply to

10   intangible property, the concept of what tangibility requires laid out by the court in

11   *Ananda Church* still holds.  The "injury to" or "loss of use" to a physical piece of

12   property has to be inherently derived from the value or exploitation of that piece of

13   property itself.

14       In *Ananda Church*, the plaintiff was attempting to bring an action for

15   conversion in the "loss of use" of papers that the plaintiff had thrown in the trash but

16   that the defendant had later taken out and then used the information contained in the

17   papers.  In rejecting the plaintiff's claim, the court stated that "[i]f plaintiffs suffered

18   monetary loss or emotional distress, it was caused not by the injury to, or the inability

19   to use the papers previously discarded, but by the *exploitation of the information*

20   contained in those papers following their retrieval from the garbage."  *Id.* at 1284.

21   Similar to a piece of paper containing valuable information, bitcoins solely exist to

22   prove value as form of digital currency, and the loss is represented by the economic

23   loss represented at the time of the alleged conversion.  Any loss that Ox Labs is

24   asserting stems from the fact that they lost 200 bitcoins back at the time of the

25   inadvertent transfer, not from the fact that they cannot physically or tangibly hold

26   200 bitcoins today.  Therefore, it is extremely relevant to the question of damages

27   of whether BitPay sold and collected proceeds from the sale of 200 bitcoins back in

28

RUSS, AUGUST & KABAT

2015, as any alleged economic loss, or alleged gain by BitPay, is limited to whether BitPay kept the bitcoins at issue or sold them for certain proceeds.

Yet, now, Ox Labs is seeking equitable relief in the return of property that was allegedly taken, which is essentially an argument for replevin, or claim and delivery under California law.  This requires that the "specific personal property claimed should be described with a reasonable degree of certainty; and as a rule, money is not the subject of such an action unless it is marked or designated in some manner so as to make it specific as regards its capability of identification."  *Tsai v. Wang*, Case No. 17-cv-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017). Therefore, if Ox Labs is arguing that it is due specific property back, under this theory of recovery, whether BitPay still possesses the property at issue is absolutely relevant.

Furthermore, by pleading unjust enrichment, Ox Labs by definition is arguing that BitPay was *unjustly* conferred a benefit (which it must also plead was through either fraudulent or wrongful conduct) at the *expense* of Ox Labs.  In order to prove that BitPay was unjustly enriched, under the very definition of the claim, Ox Labs will be required to prove that BitPay continued to own and use the 200 bitcoins at issue for their own benefit, conferring a benefit to itself at the detriment of Ox Labs. Ox Labs even maintained in its Memoranda of Contentions of Fact and Law that BitPay was further enriched in 2017 when BitPay supposedly received Bitcoin Cash and Bitcoin Gold as a result of retaining the extra 200 bitcoins from Ox Labs. Therefore, Ox Labs is attempting to exclude the *very piece of evidence* that is necessary to either prove or disprove its case.  If BitPay sold the 200 bitcoins, and tendered those proceeds, there can be no enrichment (which enrichment would be limited to the value received).  Conversely, in order to prove that BitPay retained a benefit from the 200 bitcoins that were given it, Ox Labs has to prove that they continued to possess said bitcoins.  It simply cannot seek to exclude the most relevant piece of evidence now, simply because it may derail its case.

**C.     Ox Labs' Case Law Cited In Its Motion Supports Bitpay's Position**

Once again, all of Plaintiff's cited case law supports BitPay's position. Plaintiff cites *Welco Electronics*, *Inc. v. Mora* for the proposition that "money may be the subject of conversion if the claim involves a specific, identifiable sum." 223 Cal. App. 4th 202, 209 (2014).  However, *Welco* stands for the proposition that the California courts have recognized the evolution of the common law tort of conversion to apply to intangible assets.  The court cited the example of intangible property rights "when represented by documents such as bonds, notes, bills of exchange, stock certificates, and warehouse receipts" and further stated that "these cases are far removed from the paradigm case of physical conversion; they are essentially financial or economic tort cases, not physical interference cases."  This only supports BitPay's position that the return of 200 specific bitcoins does not follow under the law of conversion; rather the correct remedy is return of the value of said bitcoins at the time of the alleged conversion.

Ox Labs then goes on to cite *Horn v. Klatt* for the proposition that even if BitPay cannot return the precise bitcoins Ox Labs supplied, it can undoubtedly return other bitcoins of "the same kind and quality." 65 Cal. App. 2d 510 (1944).  Yet *Horn* actually stands for BitPay's position, namely that the alleged conversion of property worth $50k at one time is not a conversion of property now worth over $2 million.  The court stated that "certain commodities are delivered in pledge, such as wheat, which in the handling becomes so mixed with other commodities of similar character that it may become impossible to return the identical commodity which was originally pledged." *Id*. at 522.  The court continues that "there is no apparent reason why the entire debt should be satisfied as a penalty for the conversion of pledged property which has an *ascertainable market value*." (emphasis added).  The court stated that as a matter of law, these questions are to be determined *by the facts of each case*.  (emphasis added).  Therefore, the fact that BitPay no longer has the

RUSS, AUGUST & KABAT

200 bitcoins inadvertently credited to it is an essential evidentiary fact to this case, and there is no basis for why it should be excluded.

### D.   The Only Prejudice Would Stem From Exclusion Of This Evidence

The only way this evidence is "prejudicial" to Ox Labs is that it could preclude Ox Labs from a windfall recovery at BitPay's expense.  BitPay seeks to introduce all relevant facts to this case into evidence for the jury to decide the adequate remedy at law.  The fact that BitPay immediately sold the bitcoins from Ox Labs' crediting error for proceeds will be extremely relevant to the jury as it decides the appropriate measure of damages, especially whether BitPay was "unjustly enriched" and the exclusion would be prejudicial solely to BitPay.  There is no danger of confusion, or misleading of the jury, as this case involves a very simple set of facts, and it is the jury's job to apply the facts at issue to the relevant law.  Therefore, for the foregoing reasons, the Court should deny Ox Labs' motion *in limine* to preclude BitPay from arguing that it no longer has Ox Labs' 200 bitcoins.

### E.   Ox Labs Incorrectly Alleges That BitPay Waived This Defense

In a position wholly unsupported by law, Ox Labs alleges that because BitPay did not provide an express proposed jury instruction regarding the fact that it no longer has the bitcoins at issue amounted to a waiver.  There are numerous fallacies with this position.  First, the Answer clearly alleged that BitPay disposed of the bitcoins at issue.

Second a "proposed" jury instruction is just that – a proposal that sets up a meet and confer.  The proposals were due before a meet and confer, before the actual deadline for the filing with the court any proposed jury instructions, before filing of contentions of fact and law (which address the issue, and nothing new is raised in any updated proposed jury instruction), before the filing of motions in limine, and in this case the issue of the fact that BitPay no longer has the bitcoin at issue has

RUSS, AUGUST & KABAT

been well-discussed between the Court and parties since the beginning and during recent meet and confer efforts. Ox Labs' position is essentially a "bury their head in the sand" approach to ignore the openness of this issue in a tactical attempt to win a windfall.

Third, BitPay *did* propose jury instructions that addressed the issue. Specifically, in its initial proposed instruction 29, BitPay stated that it "sold the erroneous bitcoins that day, there is no evidence BitPay continued to hold any benefit from the 200 erroneous bitcoin, and that Ox Labs is unable to show that it would have retained the 200 bitcoin but for the error." Initial proposed jury instruction 30 also stated: "you may award Ox Labs specific recovery of its property, in this case 200 Bitcoins, but only if you find either that BitPay continues to benefit from the 200 erroneous bitcoin credit and/or if Ox Labs has proven that it would still possess the 200 bitcoin but for the error. It appears that Ox Labs is hung up on labels rather than substance.

Finally, although stated as a defense in an abundance of caution, the failure to prove the right to restitution is simply Ox Labs' failure to prove its own cause of action, and is also addressed in standard jury instructions. This motion stands for nothing more than Ox Labs' attempt to avoid a critical element of its own burden of proof.

Respectfully submitted,

DATED: November 4, 2019

RUSS, AUGUST & KABAT
Benjamin T. Wang
James S. Tsuei

By: /s/ *Benjamin T. Wang*

Attorney for Defendant
BitPay, Inc.

RUSS, AUGUST & KABAT

1

## CERTIFICATE OF SERVICE

2    I hereby certify pursuant to the Federal Rules of Civil Procedure and LR 5-3

3 and 5-4 that the foregoing **DEFENDANT BITPAY, INC.'S RESPONSE TO**

4 **PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE BITPAY FROM**

5 **ARGUING THAT IT NO LONGER HAS PLAINTIFF'S PROPERTY AND**

6 **THEREFORE CANNOT RETURN IT** was served upon the attorney(s) of record

7 for each party through the ECF system as identified on the Notice of Electronic

8 Filing on November 4, 2019.

9

10

11

12        By:  */s/ Benjamin T. Wang*

13             Benjamin T. Wang

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28