LEIDER + AYALA-BASS LLP
PHILIP A. LEIDER (SBN 229751)
JOREN S. AYALA-BASS (SBN 208143)
ANAHIT SAMARJIAN (SBN 279417)
One Market Plaza, Spear Tower, Floor 36
San Francisco, CA 94105
Telephone: (415) 215-8397
philip@leiderlegal.com

Attorneys for Plaintiff
OX LABS INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OX LABS INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BITPAY, INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. CV 18-5934-MWF(KSx)<br><br>**NOTICE OF MOTION AND PRETRIAL DISPOSITIVE MOTION OF PLAINTIFF OX LABS INC.**<br><br>Date: January 16, 2020, 3:00 p.m.<br>Place: Courtroom 5A<br><br>Pretrial Conference: January 27, 2020<br>Trial: February 4, 2020 |

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................- 1 -

II.  BACKGROUND ........................................................................- 1 -

III. ARGUMENT..............................................................................- 3 -

  A.  Liability on Ox Labs' First Claim for Relief (Conversion) Is
      Established as a Matter of Law .......................................................- 3 -

    1.  Governing Principles and Elements of Conversion ......................- 3 -

    2.  Admissions and Undisputed Evidence Establishing Liability ...................- 4 -

  B.  Bitpay's Affirmative Defenses, and Each of Them, Fail as a
      Matter of Law ............................................................................- 7 -

    1.  BitPay's Pre-Litigation Settlement Offer Is Irrelevant................................- 7 -

    2.  BitPay's Statute of Limitations Defense Also Fails.......................................- 8 -

    3.  BitPay's Assertion That It No Longer Has the Bitcoins at Issue is Not a
       Defense to a Claim of Conversion ...........................................- 12 -

  C.  Ox Labs Is Entitled to the Relief Sought in Its Complaint as
      a Matter of Law .........................................................................- 13 -

IV. CONCLUSION...........................................................................- 15 -

i

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3

**Cases**

4

*AB Investments v. Regal One Corp.*,
 No. CV 09-02983-RGK (FFMx), 2009 U.S. Dist. LEXIS 135956,
 (C.D. Cal. Dec. 22, 2009) ................................................................................ 9

*Adler v. Taylor*,
 CV 04-8472-RGK (FMOx), 2005 U.S. Dist. LEXIS 5862
 (C.D. Cal. Feb. 2, 2005) ................................................................................ 14

*Allstate Leasing Corp. v. Smith*,
 238 Cal. App. 2d 128 (1965) ......................................................................... 14

*Alonso v. Badger*,
 58 Cal. App. 2d 752 (1943) .......................................................................... 5, 7

*Bancroft-Whitney Co. v. McHugh*,
 166 Cal. 140 (1913) ......................................................................................... 7

*Bufano v. San Francisco*,
 233 Cal. App. 2d 61 (1965) ........................................................................... 10

*Campbell-Ewald Co. v. Gomez*,
 577 U.S. ___, 136 S. Ct. 663 (2016) ............................................................... 8

*Cerra v. Blackstone*,
 172 Cal. App. 3d 604 (1985) ..................................................................... 3, 4, 5

*CFTC v. McDonnell*,
 287 F. Supp. 3d 213 (E.D.N.Y. 2018) ........................................................... 11

*De Vries v. Brumback*,
 53 Cal. 2d 643 (1960) ...................................................................................... 9

*Fabricon Products v. United California Bank*,
 265 Cal. App. 2d 113 (1968) ......................................................................... 10

*Fearon v. Department of Corrections*,
   162 Cal. App. 3d at 1257 ........................................................................... 7

*Flores v. California Department of Corrections and Rehabilitation*,
   224 Cal. App. 4th 199 (2014) .................................................................. 13

*Fran-Well Heater Co. v. Robinson*,
   182 Cal. App. 2d 125 (1960) ............................................................. 6, 13

*Haigler v. Donnelly*,
   18 Cal. 2d 674 (1941) .............................................................................. 14

*Horn v. Klatt*,
   65 Cal. App. 2d 510 (1944) ..................................................................... 14

*Hullinger v. Anand*,
   No. CV 15-07185 SJO (FFMx), 2016 U.S. Dist. LEXIS 111918,
   (C.D. Cal. Aug. 11, 2016) .......................................................................... 9

*Igauye v. Howard*,
   114 Cal. App. 2d 122 (1952) ..................................................................... 3

*In re Vorhariwatt*,
   No. 17-cv-1255-WQH-MDD, 2017 U.S. Dist. LEXIS 208560,
   (S.D. Cal. Dec. 18, 2017) .......................................................................... 9

*Italiani v. Metro-Goldwyn-Mayer Corp.*,
   45 Cal. App. 2d 464 (1941) .......................................................... 10, 11, 12

*Kessinger v. Organic Fertilizers, Inc.*,
   151 Cal. App. 2d 741 (1957) ................................................................... 13

*Los Angeles Federal Credit Union v. Madatyan*,
   209 Cal. App. 4th 1383 (2012) .................................................................. 3

*Lusitanian-Ammerican Development Co. v. Seaboard Dairy Credit Corp.*,
   1 Cal. 2d 121 (1934) ............................................................................. 5, 7

*Mier v. Southern California Co.*,
   56 Cal. App. 512 (1922) ............................................................................ 5

i

*Minsky v. Los Angeles*,
  11 Cal. 3d 113 (1974) ................................................................................. 13

*MTC Electrical Technologies Co. v. Leung*,
  889 F. Supp. 396 (C.D. Cal. 1995) ............................................................. 5

*Newhart v. Pierce*,
  254 Cal. App. 2d 783 (1967) ....................................................................... 5

*Nicholson v. McDonald*,
  193 Cal. App. 2d 675 (1961) ................................................................... 4, 7

*OC Kickboxing & Mixed Martial Arts, Inc. v. Warrior Arts All., Inc.*,
  No. SACV19-0004-DOC (DFMx), 2019 WL 3210093,
  (C.D. Cal. May 3, 2019) ........................................................................... 10

*Pilch v. Milikin*,
  200 Cal. App. 2d 212 (1962) ..................................................................... 12

*Rutherford v. Owens- Illinois, Inc.*,
  16 Cal. 4th 953 (1979) ................................................................................ 6

*Smith v. Greenfield State Bank*,
  222 Cal. App. 2d at 869, 873 (1963) .......................................................... 7

*Symphony FS, Ltd. v. Thompson*,
  No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641,
  (E.D. Pa. Dec. 20, 2018) ........................................................................... 12

*Wade v. Markwell & Co.*,
  118 Cal. App. 2d 410 (1953) ....................................................................... 7

*Welco Elecs., Inc. v. Mora*,
  223 Cal. App. 4th 202 (2014) .................................................................... 14

**Statutes**

Cal. Bus. & Profs. Code § 17200 .................................................................. 15

Cal. Civ. Code § 3336 ........................................................................ 8, 13

Cal. Civ. Code § 3379 ........................................................................ 13

Cal. Civ. Proc. Code § 338(c) ............................................................ 10, 12

Cal. Civ. Proc. Code § 339 ................................................................ 10, 12

**Other Authorities**

California Civil Jury Instructions 2100 (2019) ................................... 4

California Civil Jury Instructions 430 (2019) ..................................... 6

Civil Local Rule 16 ........................................................................... 7

2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114 ..................... 13

PLAINTIFF'S PRETRIAL DISPOSITIVE MOTION
Case No. CV 18-5934-MWF(KSx)

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 27, 2020, at 3:00 p.m., in the U.S. District Court for the Central District of California, Western Division, Courtroom 5A, the Honorable Michael Fitzgerald presiding, and in accordance with the stipulation of the parties and the Court's November 25, 2019 Order Regarding Pretrial and Trial Proceedings [Dkt. 65], Plaintiff Ox Labs Inc. ("Ox Labs") will and hereby does move for a dispositive order holding that: (1) liability on Ox Labs' first claim for relief (Conversion) is established as a matter of law; (2) the affirmative defenses of Defendant BitPay, Inc. ("BitPay"), and each of them, fail as a matter of law; and (3) Ox Labs is entitled to the relief sought in its Complaint as a matter of law.

Ox Labs' motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Supplemental Declaration of Akbar Thobhani filed herewith, the pleadings on file in this matter, the briefing and evidence submitted in support of and in opposition to BitPay's motion for summary judgment, all pretrial filings, the arguments of counsel, and such further matter as the Court may consider in rendering its decision.

Dated:  December 20, 2019                    Respectfully Submitted,

**LEIDER + AYALA-BASS LLP**

By:___/s/ Philip A. Leider_____
Philip A. Leider

Attorneys for Plaintiff
OX LABS INC.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The existing record in this case makes one thing abundantly clear: There is no need for a jury trial in this matter.  Ox Labs submits that BitPay's liability for Conversion is established as a matter of law.  Moreover, all of BitPay's affirmative defenses fail as a matter of law.  Finally, California law and the undisputed facts establish conclusively that Ox Labs is entitled to the relief sought in its Complaint, *i.e.*, the return of 200 Bitcoins.  The Court should accordingly enter judgment in favor of Ox Labs and order BitPay to return 200 Bitcoins to Ox Labs.

## II.   BACKGROUND

This is an action for conversion and unjust enrichment brought by Plaintiff Ox Labs against Defendant BitPay.  Complaint [Dkt. 1] at 5; Final Pretrial Conference Order [Dkt. 54-1] ("Pretrial Order") at 2.  Ox Labs is a California corporation that provides an advanced platform on which professionals can trade cryptocurrencies, including but not limited to Bitcoins.  Pretrial Order at 2.  The platform is operated by SFOX, a wholly-owned subsidiary of Ox Labs.  This memorandum will refer to Ox Labs and SFOX collectively as "Ox Labs."

BitPay is a Bitcoin payment service provider and processor.  *Id.* at 3.  At the time of the relevant events in this case, BitPay had been a customer of Ox Labs trading on the SFOX platform for several years.  *Id.*

On July 10, 2015, in connection with a transaction, Ox Labs inadvertently over-credited 200 Bitcoins to BitPay's account.  *Id.*  Neither Ox Labs nor BitPay realized the error at that time.  *Id.*  In late 2016, SFOX became aware that it had 200 fewer Bitcoins in its accounts than it should have had, but, after diligently investigating, it was unable to determine the source of the discrepancy.  Declaration of Akbar Thobhani in Support of Plaintiff Ox Labs, Inc.'s Opposition to BitPay, Inc.'s Motion for Summary Judgment [Dkt. 31-2] ("Thobhani MSJ Dec.") at ¶ 4.

- 1 -

At no time prior to February 2017 was Ox Labs aware that BitPay had received the 200 Bitcoins or aware what BitPay had done with the 200 Bitcoins. *Id.* at ¶ 5.

At some time before February 2017, BitPay's auditors noticed a discrepancy in BitPay's accounts during an account reconciliation process. Declaration of Kirstie Getch in Support of Defendant BitPay, Inc.'s Motion for Summary Judgment ("Getch MSJ Dec.") at ¶ 3. After looking further into the matter, BitPay's controller, Kirstie Getch, suspected that the discrepancy may have been due to trading activity with Ox Labs. *Id.* Ms. Getch brought the matter to the attention of BitPay's executives, and BitPay's executives reached out to Ox Labs for more information in February of 2017. *Id.* Ox Labs looked into the issue and discovered that the error had occurred at the time SFOX was in the processing of switching to a new "wallet" system; a mix-up in Bitcoin addresses had caused the crediting error. Thobhani MSJ Dec. at ¶ 5.

The parties negotiated how best to proceed in the weeks following BitPay's disclosure of the error. Pretrial Order at 3; Thobhani MSJ Dec. at ¶ 6. BitPay offered to pay approximately $57,000 to Ox Labs, which it asserted were the proceeds of transactions in which it sold or traded the 200 Bitcoins it received from Ox Labs. Thobhani MSJ Dec. at ¶ 6. This offer was patently unfair because the Bitcoins at the time had risen in value to more than $200,000. In addition, BitPay offered no evidence that it had sold the Bitcoins or to whom or when or at what price. Supplemental Declaration of Akbar Thobhani ("Thobhani Supp. Dec.") at ¶¶ 4-5. In any event, Ox Labs never consented to BitPay selling the Bitcoins it had received in error. *Id.* at ¶¶ 3-6. Ox Labs proposed various creative business solutions to resolve the impasse, but BitPay rejected each one. On May 23, 2017, Ox Labs finally demanded that BitPay return 200 Bitcoins, and BitPay unequivocally refused to do so on June 6, 2017. Pretrial Order at 3. On June 27, 2017, counsel for BitPay sent a letter to Ox Labs enclosing a check for the

approximately $57,000 it contended it owed, which Ox Labs never accepted or cashed.  BitPay's Answer [Dkt. 13] at 2.

In August and October of 2017, as a result of what is termed a "hard fork" in the industry, anyone in possession of Bitcoins also received new cryptocurrencies called Bitcoin Gold and Bitcoin Cash in equal amounts.  Pretrial Order at 3.  In other words, by refusing to return 200 Bitcoins to Ox Labs after Ox Labs' lawful demand, BitPay deprived Ox Labs of 200 Bitcoin Gold and 200 Bitcoin Cash it would otherwise have received.  In November of 2018, Bitcoin Cash underwent a further hard fork into Bitcoin SV.  By the time Ox Labs filed the Complaint in this matter on July 6, 2018, the value of the Bitcoins at issue had risen to $1,324,728.

## III.   ARGUMENT

### A.   Liability on Ox Labs' First Claim for Relief (Conversion) Is Established as a Matter of Law

#### 1.   Governing Principles and Elements of Conversion

California law defines conversion as "any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein." *Igauye v. Howard,* 114 Cal. App. 2d 122, 126 (1952).  "Unjustified refusal to turn over possession on demand constitutes conversion *even where possession by the withholder was originally obtained lawfully* and of course so does an unauthorized sale." *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) (emphasis added, citations and quotations marks omitted).  "Conversion is a strict liability tort.  The foundation of the action rests neither in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012).

Pursuant to California's judicially adopted jury instructions, Ox Labs must

prove the following elements to establish liability on its claim for Conversion:

   (1)    That Ox Labs owned or had a right to possess 200 Bitcoins;

   (2)    That BitPay substantially interfered with Ox Labs' 200 Bitcoins by knowingly or intentionally selling them or refusing to return them after Ox Labs demanded their return;

   (3)    That Ox Labs did not consent;

   (4)    That Ox Labs was harmed; and

   (5)    That BitPay's conduct was a substantial factor in causing Ox Labs' harm.

*See* California Civil Jury Instructions ("CACI") 2100 (2019).  Admissions by BitPay and the existing record conclusively establish all of these elements.

### 2.   Admissions and Undisputed Evidence Establishing Liability
#### a.   Ox Labs Owned and Had a Right to Possess 200 Bitcoins

The parties have stipulated: "On July 10, 2015, Ox Labs inadvertently credited 200 Bitcoins to BitPay's account in two deposits of 100 Bitcoins."  Pretrial Order at 3.  The undisputed evidence confirms that Ox Labs both owned and had a right to possess the 200 Bitcoins it inadvertently credited to BitPay.  *See* Thobhani MSJ Dec. at ¶¶ 4-5, 8; Thobhani Supp. Dec. at ¶¶ 3, 5.

#### b.   BitPay Substantially Interfered with Ox Labs' 200 Bitcoins

The parties have stipulated that Ox Labs demanded BitPay return 200 Bitcoins to Ox Labs on May 23, 2017, and BitPay refused Ox Labs' demand on June 6, 2017.  (Pretrial Order at 3.)  Moreover, BitPay has stymied every attempt Ox Labs has made to retrieve its property.  (Thobhani Supp. Dec. at ¶¶ 4, 5.)

BitPay's continuing refusal to return 200 Bitcoins it received in error from Ox Labs, despite repeated demands, constitutes conversion.  *See Cerra*, 172 Cal. App. 3d at 609 ("Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully"); *Nicholson v. McDonald*, 193 Cal. App. 2d 675, 680 (1961) ("McDonald

- 4 -

had no legal right to retain the property in his possession, and therefore his refusal to give up possession on Nicholson's demand amounted to conversion.") (citing 48 Cal. Jur. 2d §§ 20 and 22, pp. 557, 562)).

In a stubborn attempt to avoid returning Ox Labs' property,[1] BitPay has asserted repeatedly that it sold or transferred the 200 particular Bitcoins at issue. *See, e.g.*, Defendant BitPay, Inc.'s Memorandum of Contentions of Fact and Law [Dkt. 41] at 6.  For purposes of liability, however, "any unauthorized sale or transfer of another's property constitutes conversion." *MTC Elec. Techs. Co. v. Leung*, 889 F. Supp. 396, 403 (C.D. Cal. 1995) (citing *Cerra*, 172 Cal. App. 3d at 609).  In other words, by arguing that it sold or transferred Ox Labs' property, BitPay has actually *conceded* its liability for conversion.  *See Alonso v. Badger*, 58 Cal. App. 2d 752, 758 (1943) ("The action of appellant in exercising dominion and control over the property of respondents and making a sale thereof without such owners' consent amounted to a conversion.") (citing *Lusitanian-Am. Dev. Co. v. Seaboard Dairy Credit Corp.*, 1 Cal. 2d 121, 129 (1934)); *Mier v. S. Ca. Ice Co.*, 56 Cal. App. 512, 517 (1922) ("[T]he general rule is that one who sells the property of another, *even though he believes he has a right so to do*, is liable in trover to the true owner.")  (emphasis added, citations omitted).

Because BitPay had no right to dispose of the contested Bitcoins without Ox Labs' consent, "it does not lie in [its] mouth to set up [its] wrongful act in answer to

---

[1]      BitPay's meritless contention that the remedy of specific recovery or restitution of the property at issue is not warranted in this matter because BitPay no longer possesses the *exact same* 200 Bitcoins Ox Labs credited to it will be addressed below as a remedial issue.  For purposes of *liability*, it is sufficient that BitPay exercised "wrongful dominion" over Ox Labs' property, and it is immaterial whether BitPay exercised that dominion under a mistaken belief that it owned or had a right to sell or transfer the property.  *See Newhart v. Pierce*, 254 Cal. App. 2d 783, 793 (1967) (noting that a "taking clouded by mistake is no less a wrongful taking" and the "wrongful exercise of dominion over another's personal property is the gist of the action") (citations omitted).

[this] action, or to say that [it] is unable to comply with the demand for possession because of [its] own breach of duty." *Fran-Well Heater Co. v. Robinson*, 182 Cal. App. 2d 125, 131 (1960) (citation and internal quotation marks omitted). There can be no doubt that BitPay substantially interfered with Ox Labs' property. (Thobhani Supp. Dec. at ¶¶ 4, 5.)

### c.   Ox Labs Did Not Consent

There is no evidence, and no plausible argument, that Ox Labs authorized or consented to BitPay's sale or transfer of the property. It is undisputed that Ox Labs was unaware that BitPay received the 200 Bitcoins until long after BitPay asserts its sold or transferred them to others. Any sale or transfer was done without Ox Labs' permission. (Thobhani MSJ Dec. at ¶¶ 4-5, 7; Thobhani Supp. Dec. at ¶¶ 3-5 .)

### d.   Ox Labs Was Harmed

It is undisputed that Ox Labs was harmed. Ox Labs now has 200 fewer Bitcoins than it should have, and it has been deprived of many business opportunities, as well as the "hard fork" benefits—200 Bitcoin Gold, 200 Bitcoin Cash, and 200 Bitcoin SV – that would otherwise have accrued to Ox Labs. (Thobhani MSJ Dec. at ¶¶ 8-12.)

### e.   BitPay's Conduct Was a Substantial Factor in Causing Ox Labs' Harm

"A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." CACI 430 (2019); *see generally Rutherford v. Owens- Illinois, Inc.*, 16 Cal. 4th 953, 968-69 (1979).

It is undisputed that BitPay's refusal to return 200 Bitcoins to Ox Labs (or, alternatively, BitPay's unauthorized sale or transfer of Ox Labs' 200 Bitcoins and refusal to provide information about the transactions) has been a substantial factor in causing Ox Labs' harm. (Thobhani Supp. Dec. at ¶¶ 3-6.). While Ox Labs was

- 6 -

responsible for inadvertently transferring 200 Bitcoins to BitPay in the first instance, BitPay's refusal to return 200 Bitcoins (and, *according to BitPay*, its unauthorized transfer/sale of the property and inability to identify the transferee/buyer) is unquestionably a "substantial factor" in causing and continuing Ox Labs' harm.  *See Fearon v. Dep't of Corrs.*, 162 Cal. App. 3d at 1257; *Smith v. Greenfield State Bank*, 222 Cal. App. 2d at 869, 873 (1963); *Nicholson v. McDonald*, 193 Cal. App. 2d at 680; *Wade v. Markwell & Co.*, 118 Cal. App. 2d 410, 433-34 (1953); *Bancroft-Whitney Co. v. McHugh*, 166 Cal. 140, 143 (1913); *Alonso v. Badger*, 58 Cal. App. 2d at 758; *Lusitanian-Am. Dev. Co. v. Seaboard Dairy Credit Corp.*, 1 Cal. 2d at 129.

## B. <u>BitPay's Affirmative Defenses, and Each of Them, Fail as a Matter of Law</u>

All of BitPay's four asserted affirmative defenses fail.  *See* Pretrial Order at 10.  They either are not affirmative defenses (but are instead simply snippets from California case law or go to elements of the claims for relief) or are contrary to controlling case law and established facts.  Moreover, BitPay has not submitted proposed jury instructions on *any* of the purported affirmative defenses (except for a facially inappropriate proposed instruction on the statute of limitations).  *See* Defendant BitPay, Inc's Proposed Jury Instructions [Dkt. 48] ("BitPay Proposed JI").  The Court should therefore strike the proposed instructions and the underlying affirmative defenses.  *See* Order re Jury Trial [Dkt. 22] at 7 (requiring "strict compliance" with Civil Local Rule 16, including the exchange of proposed jury instructions before the Rule 16 pretrial conference of counsel).

### 1. BitPay's Pre-Litigation Settlement Offer Is Irrelevant

The Court has already effectively disposed of BitPay's Third Affirmative Defense ("The claims are barred by payment") and Fifth Affirmative Defense ("The remedy for conversion has already been tendered").  The gist of these supposed

- 7 -

defenses is that BitPay's counsel previously sent a check to Ox Labs for the amount BitPay contends Ox Labs is entitled to receive in damages in this action. *See* Pretrial Order at 15, 17. However, Ox Labs never cashed the check and has never accepted BitPay's "tender" of the amount offered. Kunin Declaration, Exhibit A [Dkt. 29-3]. Thus, BitPay's unaccepted "offer of settlement" (Order Re: Defendant BitPay, Inc.'s Motion for Summary Judgment [Dkt. 36] ("MSJ Order") at 4) was and remains a "legal nullity." *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, 136 S. Ct. 663, 670 (2016). Moreover, even if money damages were the only available remedy here – a contention that Ox Labs vigorously contests in seeking return of its property, *i.e.*, 200 Bitcoins – the amount BitPay tendered concededly does not include the required interest or fair compensation for the expense Ox Labs incurred recovering the amount owed. *See* Cal. Civ. Code § 3336; MSJ Order at 12. Thus, there is no factual basis for BitPay's Third and Fifth Affirmative Defenses, even if there were a legal basis or proposed jury instruction for them, which there is not.

### 2. BitPay's Statute of Limitations Defense Also Fails

Neither the Court nor a jury should undertake the questionable statute of limitations analysis that BitPay has proposed. (Pretrial Order at 14-15; BitPay Proposed JI at 8). The applicable law and undisputed facts clearly undermine any such defense, even if BitPay had proposed a proper instruction.

### a. The Continuing Violation Doctrine Applies

California law, as interpreted by federal courts, makes clear that the statute of limitations on a claim for conversion *does not even start to run* if the plaintiff has demanded return of the property at issue and the defendant has not returned it. As the California Supreme Court decisively held: "Conversion has been defined as an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession. *It is a continuing tort—as long as the person entitled to the use and possession of his property is*

- 8 -

*deprived thereof. . .* it does not necessarily end when original wrongdoer transfers

physical possession to another." *De Vries v. Brumback*, 53 Cal. 2d 643, 646-67

(1960) (In Bank) (emphasis added, citations and internal punctuations omitted).

Federal courts have repeatedly followed *De Vries* in holding that refusal to

return property after a lawful demand prolongs the violation:

> When a person who wrongfully possesses a piece of property fails to comply with a lawful demand for that property, the wrongful possessor's failure to comply with the lawful demand constitutes conversion. The conversion does not end at the moment a lawful demand is refused, it continues as long as the person entitled to the use and possession of his property is deprived thereof. The conversion continues from the time the first lawful demand is refused until the lawful owner regains possession of his property.

*In re Vorhariwatt*, No. 17-cv-1255-WQH-MDD, 2017 U.S. Dist. LEXIS 208560, at

*9-10 (S.D. Cal. Dec. 18, 2017) (citations and internal punctuation omitted). *See

also Hullinger v. Anand*, No. CV 15-07185 SJO (FFMx), 2016 U.S. Dist. LEXIS

111918, at *10 (C.D. Cal. Aug. 11, 2016) ("California law treats conversion, fraud,

and constructive fraud similarly with respect to the theory of ongoing liability.");

*AB Inv. v. Regal One*, No. CV 09-02983-RGK (FFMx), 2009 U.S. Dist. LEXIS

135956, at *3-4 (C.D. Cal Dec. 22, 2009) ("[C]onversion is a continuing tort as

long as the person entitled to the use and possession of his property is deprived

thereof and does not necessarily end when the original wrongdoer transfers physical

possession to another.") (citations and internal punctuation omitted).

In this case, it is undisputed that Ox Labs demanded the return of 200

Bitcoins on May 27, 2017, BitPay refused that demand on June 6, 2017, and BitPay

has not returned possession of Ox Labs' property to this day. *See* Pretrial Order at

3. Accordingly, *De Vries* and its progeny dictate that the violation continues and,

as a result, the statute of limitations has not even begun to run in this matter.

### b. Ox Labs Timely Filed its Complaint

Even if the continuing violation doctrine did not apply, the date of

- 9 -

conversion in this matter would be the date on which BitPay refused to return the property, *i.e.*, June 6, 2017, which is less than either two or three years before the filing of the Complaint on July 6, 2018. *See Bufano v. San Francisco*, 233 Cal. App. 2d 61, 70 (1965) ("Where an original taking is wrongful, the bar of the statute runs from the time of the unlawful taking, but where the original taking is lawful, *the statute is not set in motion until the return of the property has been demanded and refused* or until a repudiation of the owner's title is clearly and unequivocally brought to his attention.") (emphasis added). The statute of limitations defense therefore fails as a matter of law, even if BitPay were correct that a two-year limitations applies (which is not correct, as demonstrated below).

### c.    A Three-Year Statute of Limitations Applies

The statute of limitations for a claim for conversion is generally three years. Cal. Civ. Proc. Code § 338(c). However, BitPay contends that the conversion of Bitcoins should instead be governed by a two-year statute of limitations applicable to "intangible" property. *See* Cal. Civ. Proc. Code § 339; *OC Kickboxing & Mixed Martial Arts, Inc. v. Warrior Arts All., Inc.*, No. SACV19-0004-DOC (DFMx), 2019 WL 3210093, at *4 (C.D. Cal. May 3, 2019).

No controlling authority addresses whether Bitcoin is tangible or intangible property for purposes of California law of conversion. However, the reasoning of the most germane cases, *Fabricon Prods. v. United California Bank*, 265 Cal. App. 2d 113 (1968) and *Italiani v. Metro-Goldwyn-Mayer Corp.*, 45 Cal. App. 2d 464 (1941), demonstrates that Bitcoin is not subject to the narrower two-year statute.

In *Fabricon*, the Court held that a claim for specific recovery of personal property (a check for money in that instance) is subject to the three-year statute of limitations of Civil Procedure Code section 338(c) (formerly Civil Procedure Code section 388(3)). *See* 265 Cal. App. 2d at 117. The court distinguished the case at bar from those involving "intangible property rights" such as *Italiani*, which

- 10 -

concerned "plagiarism of a motion picture scenario." *Id.* (citing *Italiani*, 45 Cal. App. 2d at 466-67)(two-year statute of limitations under § 339 applies to "intangible incorporeal rights [that] exist separate and apart from the property in the paper on which it is written, or the physical substance in which it is embodied.")).

In *Italiani*, a plaintiff wrote an idea for a movie scenario on a piece of paper, sent it to the defendant, and later accused the defendant of stealing his idea and using it for a movie. The appellate court trained its focus on the fact that the plaintiff was seeking compensation for the "idea" stolen (*i.e.*, the incorporeal right) rather than the paper on which the idea was written, and thus the two-year statute of limitations for intangible property applied rather than the usual three-year statute. That pivotal distinction is inapplicable in the instant case because Bitcoin (*i.e.*, a commodity with hard monetary value) is not merely an "idea" divorceable from the paper on which it is written or, rather, the blockchain on which it is recorded. This is why the few courts to have considered the nature of Bitcoins have concluded that they are commodities subject to regulation by the Commodities Futures Trading Commission and other federal agencies. *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228-29 (E.D.N.Y. 2018).[2] As *Italiani* elaborated:

> [CCP § 338] seeks to prescribe a [three-year] statute of limitation for those actions which may be classed broadly under the head of the common law

---

[2]    As the court explained in *McDonnell*:

> Virtual currencies are generally defined as 'digital assets used as a medium of exchange.'. . . They are often described as 'cryptocurrencies' because they use 'cryptographic protocols to secure transactions . . . recorded on publicly available decentralized ledgers,' called 'blockchains.'. . . They have some characteristics of government paper currency, commodities, and securities. . . 'It is a lot like gold, in fact. The difference [] is that it is digital rather than a heavy, unwieldy object. That means that it could serve the same purposes as gold in terms of a currency, but much more efficiently because it does not have any mass and can be sent easily from place to place.'

*Id.* at 218 (citations omitted).

> actions of trover, detinue and replevin – and with the latter's statutory counterpart of claim and delivery.  All of these actions involve the concept of interference with the possession of, or damage to, some specific tangible property, and are not concerned with intangible or incorporeal rights which may exist in connection with, *or entirely apart from any particular piece of physical property*.

*Italiani*, 45 Cal. App. 2d at 467 (emphasis added).  Bitcoins do not exist in a detached realm of ideas, like some forms of intellectual property.  They are instead digital currencies with a sophisticated system of digital recording and verification:

> [Bitcoin] operates using blockchain technology, a shared public ledger reinforced by cryptography which records all confirmed transactions. . . .  Bitcoin wallets keep a secret piece of data called a private key or seed, which is used to sign transactions. This signature both prevents the transaction from being altered once it has occurred and allows the transacting parties to remain anonymous, as only the signatures are recorded in the public log.

*Symphony FS. v. Thompson*, No. 5:18-cv-3904, 2018 U.S. Dist. LEXIS 214641, at *1 n.1 (E.D. Pa. Dec. 20, 2018) (citation omitted).  Accordingly, conversion of Bitcoins should be subject to the three-year statute of limitations under Civil Procedure Code section 338(c) applicable to claims of conversion and not the two-year statute of limitations of Civil Procedure Code section 339 applicable narrowly to intangible property such as movie ideas.

### 3.  BitPay's Assertion That it No Longer Has the Bitcoins at Issue is Not a Defense to a Claim of Conversion

As demonstrated above, BitPay's Fourth Affirmative Defense ("The claims are barred because BitPay no longer has the Bitcoin at issue to return" [Pretrial Order at 10]) is not a defense.  In actuality, it is a concession of its liability.

Under California law, it is "immaterial" to a claim of conversion "that the property in question may be in the actual possession of a third party."  *Pilch v. Milikin*, 200 Cal. App. 2d 212, 224 (1962).  This is because the defendants' interference with the plaintiff's right to possess the property is sufficient, in and of itself, to constitute a conversion, regardless whether the property has been transferred to another person or sold.  "Any wrongful assumption of authority over

- 12 -

chattels, inconsistent with another's right of possession or subversive of his vested interest therein, amounts to conversion." *Kessinger v. Organic Fertilizers, Inc.*, 151 Cal. App. 2d 741, 753 (1957) (citation and internal quotation marks omitted). Thus, in a common law action for "detinue," a species of the modern tort of conversion where the plaintiff sought the return of personal property wrongfully detained, "it was no defense . . . to plead that the defendant, before the commencement of the action, had wrongfully disposed of the property, and, therefore, was not in possession of it." *Fran-Well Heater*, 182 Cal. App. 2d at 130 (citation and internal quotation marks omitted). Because the defendant had no right to dispose of the contested property absent consent from the plaintiff "it does not lie in his mouth to set up his wrongful act in answer to such action, or to say that he is unable to comply with the demand for possession because of his own breach of duty." *Id.* at 131 (citation and internal quotation marks omitted). BitPay's Fourth Affirmative Defense therefore fails as a matter of law and seals its liability.

### C.   Ox Labs Is Entitled to the Relief Sought in Its Complaint as a Matter of Law

The primary relief Ox Labs seeks in this action is the return of 200 Bitcoins. (Complaint at 5; Pretrial Order at 6.) Since, as demonstrated above, BitPay is liable for Conversion and all of its affirmative defenses lack merit, Ox Labs is entitled to recover 200 Bitcoins. *See Minsky v. L.A.*, 11 Cal. 3d 113, 121 (1974) ("Where a wrongdoer has converted . . . personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort).") (citing 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114, p. 983); *Flores v. Cal. Dep't of Corrs. & Rehab.*, 224 Cal. App. 4th 199, 206 (2014), *review denied* (Apr. 30, 2014) ("Available remedies for conversion include specific recovery of property

- 13 -

1   with damages for its detention and damages based on the value of the property.")

2   (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal.

3   App. 2d 128, 132-133 (1965)); *Adler v. Taylor*, CV 04-8472-RGK (FMOx), 2005

4   U.S. Dist. LEXIS 5862, at *9 (C.D. Cal. Feb. 2, 2005) ("Because the Complaint

5   supports a conversion claim, it also supports a specific recovery remedy.").

6        Attempting to avoid returning what it received, BitPay has taken the

7   exceedingly formalistic position that it cannot return *the same exact* 200 Bitcoins

8   Ox Labs originally possessed.  This is not what Ox Labs seeks and manifestly not

9   what the law requires – otherwise a recipient of mistakenly given property could

10  simply sell the property immediately and, when subject to a demand from the

11  owner, claim that it cannot be returned (if the value rose) or return an identical item

12  (if the value declined).  Case law authorizing the return of money mistakenly

13  provided does not require that the exact same dollar bills be traced back to the

14  transaction in order to justify its recovery.  *See Welco Elecs., Inc. v. Mora*, 223 Cal.

15  App. 4th 202, 209 (2014) ("Money may be the subject of conversion if the claim

16  involves a specific, identifiable sum; it is not necessary that each coin or bill be

17  earmarked.") (citing *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941)).

18        BitPay's formalistic contention should be rejected for a further reason.

19  Bitcoins are "fungible" – *i.e.*, they are a digital currency or medium of exchange –

20  and one Bitcoin is the same as any other in all material respects.  BitPay concedes

21  that it has had more than 200 Bitcoins at every moment relevant to this case that it

22  could restore to Ox Labs.  *See* Pretrial Order at 3 ("At all times relevant to this

23  matter, BitPay possessed more than 200 Bitcoins").  Ox Labs has no objection to

24  BitPay restoring 200 Bitcoins that are not the same ones Ox Labs originally

25  credited to BitPay.  (Thobhani Supp. Decl. at ¶ 6).  *See Horn v. Klatt*, 65 Cal. App.

26  2d 510, 521 (1944) ("[W]here the subject matter consists of chattels or choses in

27  action which are identical in kind and quality with other chattels or choses in action,

28

- 14 -

1  restitution may be made by giving other things of the same kind and quality.").

2  *Horn* cites the Restatement of Restitution for this proposition and specifically

3  mentions "shares in a corporation" and "bonds issued by a corporation" as

4  examples of such fungible items.  Bitcoins are clearly analogous.

5      No court would bar an action for restitution under the Unfair Competition

6  Law (Business & Professions Code § 17200) because the defendant no longer

7  possessed the precise dollar bills it wrongly transferred to someone else.  Moreover,

8  whether the value of those dollars had risen or fallen with respect to other

9  currencies does not matter – Courts simply award the same number of dollars.  The

10  same is true of shares of a corporation and bonds issued by a corporation.  Similarly

11  here, BitPay should not be immune from the remedy of specific recovery simply

12  because it claims that it transferred or sold the Bitcoins Ox Labs provided (and

13  evidently bought others with the proceeds) or because the value of the Bitcoins has

14  fluctuated when measured against different currencies.

15  **IV.   CONCLUSION**

16      There is no need for the jury trial this busy Court has scheduled to begin on

17  February 4, 2020.  Liability is established, each of Defendant's affirmative defenses

18  fails, and Plaintiff is entitled to the remedy it has requested.  Accordingly, the Court

19  should enter judgment in favor of plaintiff Ox Labs and order defendant BitPay to

20  restore 200 Bitcoins along with other authorized relief.

21  Dated:  December 20, 2019                Respectfully Submitted,

22                **LEIDER + AYALA-BASS LLP**

23                By:___/s/ Philip A. Leider___
                  Philip A. Leider

24

25                Attorneys for Plaintiff
                  OX LABS INC.

26

27

28

- 15 -

## CERTIFICATE OF SERVICE

I certify that counsel of record, listed below, is being served on December 20, 2019, with a copy of this document through the CM/ECF Filing System as identified on the Notice of Electronic Filing dated December 20, 2019.

/s/ *Anahit Samarjian*
Anahit Samarjian

Benjamin T. Wang
bwang@raklaw.com
James Tsuei
jtsuei@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard,12th Floor
Los Angeles, California 90025

Lawrence H. Kunin
lhk@mmmlaw.com
MORRIS, MANNING & MARTIN, L.L.P.
1600 Atlanta Financial Center
3343 Peachtree Road N.E.
Atlanta, Georgia 30326

PLAINTIFF'S PRETRIAL DISPOSITIVE MOTION
Case No. CV 18-5934-MWF(KSx)