LEIDER + AYALA-BASS LLP
PHILIP A. LEIDER (SBN 229751)
JOREN S. AYALA-BASS (SBN 208143)
ANAHIT SAMARJIAN (SBN 279417)
One Market Plaza, Spear Tower, Floor 36
San Francisco, CA 94105
Telephone: (415) 215-8397
philip@leiderlegal.com

Attorneys for Plaintiff
OX LABS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| OX LABS INC., a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>BITPAY, INC., a Delaware corporation, and DOES 1-10,<br><br>          Defendants. | Case No. CV 18-5934-MWF(KSx)<br><br>**PLAINTIFF OX LABS INC.'S OPPOSITION TO DEFENDANT BITPAY, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date: January 16, 2020, 3:00 p.m.<br>Place: Courtroom 5A<br><br>Pretrial Conference: January 27, 2020<br>Trial: February 4, 2020 |

# **TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.     ARGUMENT ......................................................................................... 2

    A.      BITPAY IS LIABLE FOR CONVERSION ........................................ 2

        1.      BitPay "Liquidated" Ox Lab's Property
        Without its Consent ........................................................... 2

        2.      BitPay Refused to Return 200 Bitcoins to
        Ox Labs Despite Ox Labs' Lawful Demand ............................... 3

    B.      OX LABS IS ENTITLED TO THE RETURN OF 200 BITCOINS .... 4

        1.      Ox Labs is Entitled to 200 Bitcoins, Whether
        They are the Same Ones or Different Ones ................................. 5

        2.      Ox Labs Does Not Have to "Trace" its Bitcoins
        After BitPay Took Possession of Them ...................................... 7

        3.      200 Bitcoin Are 200 Bitcoins, Regardless How
        Their Value in Dollars Has Changed ......................................... 10

        4.      This Court Applies State Law Sitting in Diversity,
        It Does Not Make California Law ............................................. 11

    C.      ALTERNATIVELY, OX LABS IS ENTITLED TO APPROPRIATE
    MONETARY DAMAGES ................................................................. 13

III.    CONCLUSION ........................................................................................ 15

- i -

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adler v. Taylor,*
CV 04-8472-RGK (FMOx), 2005 U.S. Dist. LEXIS 5862
(C.D. Cal. Feb. 2, 2005) ........................................................................... 5

*Allstate Leasing Corp. v. Smith,*
238 Cal. App. 2d 128 (1965) ............................................................... 4, 5

*Alonso v. Badger,*
58 Cal. App. 2d 752 (1943) ...................................................................... 2

*Bufano v. San Francisco,*
233 Cal. App. 2d 61 (1965) .................................................................... 14

*Caswell v. Putnam,*
120 N.Y. 153 (1890) .................................................................................. 6

*Cerra v. Blackstone,*
172 Cal. App. 3d 604 (1985) ........................................................... 1, 2, 3

*Del Webb Communities., Inc. v. Partington,*
652 F.3d 1145 (9th Cir. 2011) ............................................................... 11

*Doe v. Cutter Biological,*
852 F. Supp. 909 (D. Idaho 1994) ......................................................... 11

*Express Media Group, LLC v. Express Corp.,*
No. C 06-03504 WHA, 2007 U.S. Dist. LEXIS 34800
(N.D. Cal. May 10, 2007) ......................................................................... 8

*Faulkner v. First National Bank,*
130 Cal. 258 (1900) .......................................................................... 7, 8, 9

*Flores v. California Department of Corrections & Rehabilitation,*
224 Cal. App. 4th 199 (2014) .............................................................. 4, 8

*Fran-Well Heater Co. v. Robinson,*
182 Cal. App. 2d 125 (1960) ............................................................... 4, 5

*Gee v. Tenneco, Inc.,*
615 F.2d 857 (9th Cir. 1980) ................................................................. 11

*Horn v. Klatt,*
65 Cal. App. 2d 510 (1944) ...................................................................... 5

*Jahn v. Brickey,*
168 Cal. App. 3d 399 (1985) ................................................................. 13

- ii -

*Klingebiel v. Lockheed Aircraft Corp.*,
494 F.2d 345 (9th Cir. 1974) ............................................................ 11

*Lint v. Chisholm*,
121 Cal. App. 3d 615 (1981) ............................................................ 14

*Los Angeles Federal Credit Union v. Madatyan*,
209 Cal. App. 4th 1383 (2012) .......................................................... 3

*Lusitanian-American Development Co. v. Seaboard Dairy Credit Corp.*,
1 Cal. 2d 121 (1934) .......................................................................... 2

*Mier v. Southern California Ice Co.*,
56 Cal. App. 512 (1922) ..................................................................... 3

*Minsky v. Los Angeles*,
11 Cal. 3d 113 (1974) ............................................................... 1, 4, 13

*Moreno v. Greenwood Auto Ctr.*,
91 Cal. App. 4th 201 (2001) ............................................................ 14

*MTC Electric Technologies Co. v. Leung*,
889 F. Supp. 396  (C.D. Cal. 1995) .................................................... 2

*Myers v. Stephens*,
233 Cal. App. 2d 104 (1965) ............................................................ 14

*Newhart v. Pierce*,
254 Cal. App. 2d 783  (1967) ...................................................... 3, 14

*Nicholson v. McDonald*,
193 Cal. App. 2d 675 (1961) .............................................................. 3

*Pacific-Southern Mortgage Trust Co. v. Insurance Co. of North America*,
166 Cal. App. 3d 703 (1985) ............................................................ 14

*Pilch v. Milikin*,
200 Cal. App. 2d 212 (1962) .............................................................. 5

*Richardson v. Shaw*,
209 U.S. 365 (1908) ........................................................................... 6

*Roam v. Koop*,
41 Cal. App. 3d 1035 (1974) ............................................................ 13

*Sher v. Sandler*,
90 N.E.2d 536 (Mass. 1950) .............................................................. 6

*State Farm Mutual Automobile Insurance Co. v. Rodriguez*,
568 B.R. 328 (2007) ........................................................................ 14

*Trowbridge Sidoti LLP v. Taylor*,
No. 8:16-cv-00771-ODW-SK, 2018 U.S. Dist. LEXIS 93651
(C.D. Cal. June 4, 2018) ..................................................................... 8

- iii -

*Tsai v. Wang*,
   Case No. 17-cv-400614-DMR, 2017 WL 2587929
   (N.D. Cal. June 14, 2017) .......................................................................... 7

**Statutes**

Cal. Civ. Proc. Code § 3336 ............................................. 4, 8, 13, 14, 15

Cal. Civ. Proc. Code § 3379 ............................................................ 4, 8, 9

Cal. Civ. Proc. Code § 3380 ..................................................................... 9

**Other Authorities**

2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114 ........................... 4

48 Cal. Jur. 2d § 20 ................................................................................. 3

48 Cal. Jur. 2d § 22 ................................................................................. 3

Hanburg and Maudsley,
   *Modern Equity* (12th ed. by J. Martin, 1985) ....................................... 10

Johns, California Damages: Law and Proof
   (5th ed. 1997) § 7.2(b) .......................................................................... 10

*Are You Ever Allowed to Spend Money That Was Mistakenly Deposited Into Your*
   *Bank Account?*, N.C. CONSUMERS COUNCIL, https:// www.ncconsumer.org/
   news-articles-eg/using-money-mistakenly-deposited-into-your-account.html
   <last visited December 26, 2019> ........................................................ 12

Miriam Caldwell, *What Happens If the Bank Makes a Deposit Into the Wrong*
   *Account?*, THE BALANCE, https://www.thebalance.com/ can-bank-make-deposits-
   to-wrong-account-2386128 <last visited December 26, 2019> ......................... 12

PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. CV 18-5934-MWF(KSx)

Plaintiff Ox Labs Inc. ("Ox Labs") respectfully submits this memorandum in opposition to the Motion for Judgment as a Matter of Law [Dkt. 66] ("Motion") of Defendant BitPay, Inc. ("BitPay").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

BitPay's Motion is demonstrably wrong on the facts and the law.  On the facts, BitPay assumes matters that are squarely contradicted by its own admissions and the uncontroverted evidence.  Most critically, BitPay's repeated assertions that it is an "innocent recipient" that has done nothing "wrongful" are completely undermined by its admissions that: (1) BitPay (supposedly and without permission) sold Ox Labs' 200 Bitcoins soon after receiving them, and (2) refused to return Ox Labs' 200 Bitcoins or their equivalent to Ox Labs upon lawful demand.  Both of these actions constitute conversion.  *See Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) ("Unjustified refusal to turn over possession on demand constitutes conversion *even where possession by the withholder was originally obtained lawfully* and of course so does an unauthorized sale.") (emphasis added, citations omitted).  BitPay is not "innocent" and certainly did something "wrongful."

On the law, BitPay badly misunderstands the authority governing remedies for conversion.  As California's highest court has held:  "Where a wrongdoer has converted . . . personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort)."  *Minsky v. L.A.*, 11 Cal. 3d 113, 121 (1974).  Thus, Ox Labs is entitled to the return of 200 Bitcoins or appropriate compensatory damages, at its election.  BitPay's Motion must therefore be denied.

- 1 -

## II.    ARGUMENT

### A.    BITPAY IS LIABLE FOR CONVERSION

#### 1.    BitPay "Liquidated" Ox Lab's Property Without its Consent

BitPay contends throughout its moving papers and elsewhere that it sold Ox Labs' 200 Bitcoins at some point after receiving them in error. *See, e.g.,* Motion at 3 ("It remains BitPay's position that it liquidated the erroneous bitcoin for approximately $57,000 on July 10, 2015."). Despite its shifting and misleading exposition of the facts regarding this "liquidation,"[1] it is undisputed that any such sale incontrovertibly took place, if at all, without Ox Labs' consent.[2] In other words, BitPay concedes that it converted Ox Labs' property. *See MTC Elec. Techs. Co. v. Leung*, 889 F. Supp. 396, 403 (C.D. Cal. 1995) ("[A]ny unauthorized sale or transfer of another's property constitutes conversion.") (citing *Cerra*, 172 Cal. App. 3d at 609); *Alonso v. Badger*, 58 Cal. App. 2d 752, 758 (1943) ("The action of appellant in exercising dominion and control over the property of respondents and making a sale thereof without such owners' consent amounted to a conversion.") (citing *Lusitanian-Am. Dev. Co. v. Seaboard Dairy Credit Corp.*, 1 Cal. 2d 121, 129 (1934)).

BitPay's repeated protestations that it *received* the 200 Bitcoins innocently does not alter the critical fact is that it *disposed of* Ox Labs' property without Ox

_____

[1] As discussed below in response to BitPay's "tracing" argument, BitPay is the sole party in a position to say what happened to the Bitcoins at issue after BitPay received them, BitPay refused to provide any discovery on the question, and BitPay cannot definitively say what happened to the Bitcoins.

[2] It is undisputed that Ox Labs was unaware that BitPay received the 200 Bitcoins until long after BitPay asserts its "liquidated" them. *See* Pretrial Conference Order [Dkt. 54] ("Pretrial Order") at 3 (Stipulation No. 11). Any sale or transfer was unquestionably done without Ox Labs' permission. *See* Thobhani MSJ Dec. [Dkt. 31-2] at ¶¶ 4-5, 7; Thobhani Supp. Dec. [Dkt. 67-2] at ¶¶ 3-5.

- 2 -

Labs' permission.  *See Mier v. S. Ca. Ice Co.*, 56 Cal. App. 512, 517 (1922) ("[T]he general rule is that one who sells the property of another, *even though he believes he has a right so to do*, is liable in trover to the true owner.")  (emphasis added, citations omitted); *Newhart v. Pierce*, 254 Cal. App. 2d 783, 793 (1967) (noting that a "taking clouded by mistake is no less a wrongful taking" and the "wrongful exercise of dominion over another's personal property is the gist of the action") (citations omitted).  Whether BitPay knew or did not know the property belonged to someone else is immaterial.  "Conversion is a strict liability tort.  The foundation of the action rests neither in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012).

## 2.   BitPay Refused to Return 200 Bitcoins to Ox Labs Despite Ox Labs' Lawful Demand

BitPay's refusal to return 200 Bitcoins to Ox Labs is a second basis for its liability.  The parties have stipulated that Ox Labs demanded the return of 200 Bitcoins on May 27, 2017, and BitPay refused that demand on June 6, 2017.  *See* Pretrial Conference Order [Dkt. 54] ("Pretrial Order") at 3 (Stipulation Nos. 9 & 10).  BitPay's continuing refusal to return 200 Bitcoins to Ox Labs, despite repeated demands, constitutes conversion.  *See Cerra*, 172 Cal. App. 3d at 609 ("Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully") (citation omitted); *Nicholson v. McDonald*, 193 Cal. App. 2d 675, 680 (1961) ("McDonald had no legal right to retain the property in his possession, and therefore his refusal to give up possession on Nicholson's demand amounted to conversion.") (citing 48 Cal. Jur. 2d §§ 20 and 22, pp. 557, 562)).

- 3 -

BitPay's assertion that "it cannot return what it no longer has" (Motion at 2) is both patently false and beside the point.  BitPay has admitted that at all times relevant to this case it has had 200 Bitcoins in its possession that it could return to Ox Labs.  *See* Pretrial Order at 3 (Stipulation No. 11).  BitPay's wrongful sale of Ox Labs property is not a defense to liability or an excuse for refusing to return like property.  Thus in a common law action for "detinue," a species of the modern tort of conversion where the plaintiff sought the return of personal property wrongfully detained, "it was no defense . . . to plead that the defendant, before the commencement of the action, had wrongfully disposed of the property, and, therefore, was not in possession of it." *Fran-Well Heater Co. v. Robinson*, 182 Cal. App. 2d 125, 130 (1960) (citation and internal quotation marks omitted).  Because the defendant had no right to dispose of the contested property absent consent from the plaintiff "it does not lie in his mouth to set up his wrongful act in answer to such action, or to say that he is unable to comply with the demand for possession because of his own breach of duty." *Id.* at 131 (citation and internal quotation marks omitted).

**B.    OX LABS IS ENTITLED TO THE RETURN OF 200 BITCOINS**

With conversion liability established, Ox Labs is now entitled to elect among the available remedies for conversion. *See Minsky*, 11 Cal. 3d at 121 ("Where a wrongdoer has converted . . . personal property, the injured owner must elect between his right of ownership and possession (with the remedy of specific recovery) and his right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort).") (citing 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 114, p. 983); *Flores v. Cal. Dep't of Corrs. & Rehab.*, 224 Cal. App. 4th 199, 206 (2014), *review denied* (Apr. 30, 2014) ("Available remedies for conversion include specific recovery of property with damages for its detention and damages based on the value of the property.")

1   (citing Cal. Civ. Code §§ 3336, 3379; *Allstate Leasing Corp. v. Smith*, 238 Cal.

2   App. 2d 128, 132-133 (1965)); *Adler v. Taylor*, CV 04-8472-RGK (FMOx), 2005

3   U.S. Dist. LEXIS 5862, at *9 (C.D. Cal. Feb. 2, 2005) ("Because the Complaint

4   supports a conversion claim, it also supports a specific recovery remedy.").

5       BitPay raises four meritless arguments against specific recovery: (1) BitPay

6   no longer has Ox Labs' exact 200 Bitcoins and therefore cannot "return" them; (2)

7   Ox Labs has the duty to "trace" its 200 Bitcoins to BitPay's current Bitcoin

8   holdings; (3) the value of Bitcoin has changed over time; and (4) it would set a

9   "dangerous precedent" to grant Ox Labs the relief California law authorizes. *See*

10  Motion at 2-6.  Each argument fails as a matter of law and common sense.

11          **1.    Ox Labs is Entitled to 200 Bitcoins, Whether They are the**
12                  **Same Ones or Different Ones**

13      BitPay's first argument is that it no longer possesses the exact same Bitcoins

14  that Ox Labs erroneously provided and therefore cannot return them.  (Motion at 2-

15  4.)  Again, since BitPay concedes that it wrongfully sold or detained Ox Labs'

16  property, "it does not lie in [BitPay's] mouth . . . to say that [it] is unable to comply

17  with the demand for possession because of [its] own breach of duty." *Fran-Well*

18  *Heater*, 182 Cal. App. 2d at 131 (citation and internal quotation marks omitted).

19  Under California law, it is "immaterial" to a claim of conversion "that the property

20  in question may be in the actual possession of a third party." *Pilch v. Milikin*, 200

21  Cal. App. 2d 212, 224 (1962).

22      BitPay cites no authority for its further assertion that it cannot be ordered to

23  return 200 Bitcoins identical in all material respects to the Bitcoins Ox Labs

24  mistakenly provided.  California law clearly permits such relief.  *See Horn v. Klatt*,

25  65 Cal. App. 2d 510, 521 (1944) ("[W]here the subject matter consists of chattels or

26  choses in action which are identical in kind and quality with other chattels or choses

27  in action, restitution may be made by giving other things of the same kind and

28

- 5 -

quality.").  *Horn* cites the Restatement of Restitution for this proposition and specifically mentions "shares in a corporation" and "bonds issued by a corporation" as examples of such fungible items.  Thus in *Richardson v. Shaw*, 209 U.S. 365, 378-79 (1908), the U.S. Supreme Court held that a "certificate of the same number of shares, although printed upon different paper and bearing a different number, represents precisely the same kind and value of property as does another certificate for a like number of shares of stock in the same corporation" and further noted it is a "misconception of the nature of the certificate to say that a return of a different certificate or the right to substitute one certificate for another is a material change in the property right held."

In *Richardson*, the Supreme Court relied upon *Caswell v. Putnam*, 120 N.Y. 153 (1890), which explained that:

> [O]ne share of stock is not different in kind or value from every other share of the same issue and company.  They are unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon or harness.  The stock has no earmark which distinguishes one share from another, so as to give it any additional value or importance; like grain of a uniform quality, one bushel is of the same kind and value as another.

*Id.* at 157.  BitPay cites no cases and makes no arguments that would justify treating Bitcoins any differently.  BitPay can and must be ordered to return 200 Bitcoins to Ox Labs.  *See Sher v. Sandler*, 90 N.E.2d 536, 540 (Mass. 1950) (holding that a prevailing plaintiff had a right to 125 corporate shares wrongfully acquired by the defendant, rejecting the defendant's argument that it no longer had the same shares because it was not "material that they are not the original shares owned by the plaintiff" and affirming that the plaintiff "ought not to be deprived of that right because the defendant happens to hold the same number of shares in a different certificate.").

- 6 -

1

2

**2.     Ox Labs Does Not Have to "Trace" its Bitcoins After BitPay Took Possession of Them**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

BitPay makes the remarkable – and totally unsupported – assertion that a plaintiff deprived of its property cannot recover the property if it cannot trace what the defendant did with it.  *See, e.g.,* Motion at 2 ("Plaintiff cannot show that BitPay had control of the erroneously credited bitcoin beyond July 10, 2015, and certainly not beyond July 14, 2015."); *id.* at 5 ("As noted above, Plaintiff cannot identify what happened to the 200 bitcoin it credited to Defendant on July 10, 2015.").  This contention flies in the face of long-standing California law, which does not reward a guilty converter for transferring or selling the property to another person after he first gained lawful possession of it.  *See Faulkner v. First Nat'l Bank*, 130 Cal. 258, 265 (1900) ("[T]hough possession by the defendant must be proved, yet it is not necessary that it shall be continued up to the time of the commencement of the suit") (citation and internal quotations marks omitted).  In *Faulkner*, the Court cited numerous authorities for this very proposition in concluding:  "It has been held from a very early time that where a chattel has been bailed to a person it does not lie in his mouth to set up his own wrongful act in answer to an action of detinue, though the chattel has ceased to be in his possession at the time of the demand."  *Id.* at 266 (citation and internal quotation marks omitted).

20

21

22

23

24

25

26

27

BitPay further asserts that Ox Labs has not identified the "specific personal property claimed . . . with a reasonable degree of certainty."  *See* Motion at 5 (quoting *Tsai v. Wang*, Case No. 17-cv-400614-DMR, 2017 WL 2587929, at *13 (N.D. Cal. June 14, 2017)).  The assertion is patently absurd.  BitPay *quotes* the very documentation that Ox Labs provided long before suit identifying the 200 Bitcoins inadvertently credited to BitPay.  *See* Motion at 4, footnote 3.  BitPay even acknowledges in the very same footnote:  "*These are the 200 bitcoins SFOX erroneously credited to BitPay*" (emphasis added).  Ox Labs produced this

28

- 7 -

documentation in discovery, and it appears on the Exhibit List the parties jointly submitted for trial.  *See* Joint Exhibit List [Dkt. 53], Plaintiff's Exhibit 153.  In short, BitPay expects Ox Labs and the Court to ignore the evidence BitPay itself has offered and accept the ridiculous proposition that BitPay sent $57,000 to Ox Labs in an attempt to settle the matter without BitPay knowing "with a reasonable degree of certainty" which property Ox Labs is claiming.  This is not the sort of thing a busy federal court or a jury should be wasting their time considering.

The Court can also readily dispose of BitPay's argument that "Plaintiff cites Cal. Civ. Code § 3379" but "that code section is for a replevin action, which is an entirely separate cause of action and remedy."  (Motion at 4.)  The California Court of Appeal has cited the same code section as a basis for specific recovery in a conversion action.  *See Flores*, 224 Cal. App. 4th at 206.  In addition, both section 3379 and 3336 are found within Division 4, Part 1 of the Civil Code, aptly titled "Relief," under the Specific and Preventive Relief and Compensatory Relief Titles, respectively.  They set out remedies, not causes of action.  Finally, the California Supreme Court has long rejected such labeling games in the context of claims for the return of property.  *See Faulkner*, 130 Cal. at 264 ("[W]e have here no forms of civil actions. We have only one form of action, which has no name; so that an action cannot be here defeated, as it could have been at common law, because not properly named.").[3]

_____

[3] Federal district courts have also recognized that specific recovery is a remedy in a conversion action based on California law.  *See, e.g., Trowbridge Sidoti LLP v. Taylor*, No. 8:16-cv-00771-ODW-SK, 2018 U.S. Dist. LEXIS 93651, at *11-14 (C.D. Cal. June 4, 2018) (a plaintiff may seek specific recovery *or* damages under California law if specific recovery is pleaded and not abandoned before trial); *Express Media Grp., LLC v. Express Corp.*, No. C 06-03504 WHA, 2007 U.S. Dist. LEXIS 34800, at *12 (N.D. Cal. May 10, 2007) (along with the remedies for conversion enumerated in Cal. Civ. Code § 3336 "[p]laintiffs may also be entitled to specific recovery of the converted property in addition to monetary damages. Cal. Civ. Code §§ 3379-3380.")

- 8 -

1    There can be no question that Ox Labs has simply and precisely identified

2    the property claimed.  In fact, the parties stipulated that Ox Labs inadvertently

3    credited the 200 Bitcoins at issue to BitPay's account.  *See* Pretrial Motion at 3,

4    Stipulation No. 5.  Furthermore, BitPay cites no authority – because there is none –

5    that would force a plaintiff to "trace" the fate of its wrongfully withheld property

6    after the wrongdoer gained possession.  To the contrary, the California Supreme

7    Court has specifically rejected that proposition, citing the "maxim that no one can

8    take advantage of his own wrong."  *Faulkner*, 130 Cal. at 266 (citations and internal

9    quotation marks omitted).

10    Even if "tracing" were required, BitPay is the party who should have this

11    information but can only provide a shifting and contradicting account of it.  In its

12    summary judgment briefing, BitPay (falsely and misleadingly) asserted that it sold

13    Ox Labs' 200 Bitcoins on Ox Labs' own exchange, SFOX, on July 10, 2015.  Mot.

14    For Summary Judgment [Dkt. 29] at 3 (citing Getch Decl. [Dkt. 29-5] ¶ 5 and

15    Exhibit B [Dkt. 29-7] thereto).  After counsel for Ox Labs pointed out that BitPay's

16    then-CEO had acknowledged that the 200 Bitcoins were instead transferred to

17    Kraken, a competing virtual currency exchange, on May 18, 2017 (Thobhani Supp.

18    Dec. at ¶ 4 & Exh. A at 1), BitPay now clings to its original and insupportable

19    assertion but confusingly and contradictorily retreats to a new argument that it

20    "liquidated to zero" its Bitcoin holdings on all exchanges by July 15, 2017, and

21    therefore had to have sold Ox Labs' Bitcoins (although it tellingly does not say it

22    "sold" them and cannot or will not identify when, where or to whom).  (Motion at

23    3.)  BitPay spins out this convoluted narrative despite the fact that it refused to

24    produce any evidence regarding its Bitcoin holdings in discovery and specifically

25    objected that such evidence is "irrelevant."  May 22, 2019 BitPay's Responses to

26    Ox Labs' First Set of Interrogatories at 3-4.  BitPay's "tracing" argument must be

27    roundly rejected.

28

- 9 -

### 3.   200 Bitcoin Are 200 Bitcoins, Regardless How Their Value in Dollars Has Changed

BitPay's next argument, also unsupported by any legal authority, is that specific recovery and restitution are not available remedies when the property converted has changed substantially in value.  *See* Motion at 4-5.  The law does not address this argument because it defies logic.  If a plaintiff establishes that a defendant wrongfully took possession of 50 gold coins and refused to return 50 gold coins to the plaintiff, despite having 50 like gold coins it could supply, no court would deny the plaintiff the return of 50 gold coins simply because the price of gold in U.S. dollars had dramatically risen in the time since the defendant wrongly asserted dominion over the plaintiff's property.  The *defendant* bears the risk of such a rise in value because it wrongfully kept the property and refused to return it.  It is the *plaintiff* who has been deprived of that rise in value, and the defendant could have avoided some or all of it by returning the item or its equivalent upon demand.  In similar manner, the cases discussed above regarding stock certificates and corporate bonds clearly involved instruments that fluctuate in value.  That did not prevent the courts from awarding return of the property at issue or their equivalent.  To prevent a tortfeasor from profiting from his or her wrongdoing (such as when converted property increases in value), courts have permitted the recovery of net profits in addition to the value of the property at the time of conversion (*e.g.,* Johns, California Damages: Law and Proof (5th ed. 1997) § 7.2(b), p. 7-4) or taken into account increased value when determining equitable remedies (*e.g.,* Hanburg and Maudsley, *Modern Equity* (12th ed. by J. Martin, 1985) p. 306 ("Thus, in a case of unjust enrichment, the plaintiff will sue in quasi-contract for recovery; but if the defendant still has the property, and either the plaintiff wants specific recovery, or the defendant is insolvent, or the property has increased in its value while the defendant held it, the plaintiff will be able to rely

- 10 -

upon the proprietary remedy of a constructive trust."). In short, the fact that property may change in value does not immunize a tortfeasor from returning the same property or its equivalent.

### 4. This Court Applies State Law Sitting in Diversity, It Does Not Make California Law

BitPay's final argument is that this Court would set a "dangerous precedent" by awarding Ox Labs the remedies of restitution or specific recovery that California law authorizes. (Motion at 5-6.) The argument is a desperate scare tactic and betrays a fundamental misunderstanding of the role federal courts play in diversity actions. "'The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum.'" *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)). The Court is "to ascertain and apply the existing California law, not to predict that California may change its law and then to apply the federal court's notion of what that change might or ought to be." *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346 (9th Cir. 1974). In sum, as a "federal court exercising jurisdiction over this case based on diversity of citizenship among the parties, it is the role of this court to apply, and not to make, [state] law." *Doe v. Cutter Biological*, 852 F. Supp. 909, 923 (D. Idaho 1994).

If the Court nevertheless indulges BitPay's scare tactic, it will quickly see that the argument is baseless. Awarding Ox Labs its wrongfully withheld Bitcoins will not "encourage negligence and corporate recklessness by creating incentives for future parties in Plaintiff's position to allow errors to occur and shift the burden of those errors to the innocent party." (Motion at 5.) There is no evidence that Ox Labs made the crediting error in this matter in hopes of obtaining unjustified profits without risk. To the contrary, Ox Labs diligently tried to locate the source of the

- 11 -

error, but it was unable to determine that BitPay had received the erroneous transfer.  Thobhani MSJ Dec. at ¶ 4.  By applying California law neutrally and fairly according to its letter, the Court will encourage recipients of erroneously provided benefits to keep track of their accounts, assure that they are entitled to benefits they receive at the time they receive them, notify the sender promptly if they may not be entitled to them, and return the benefits if they were provided in error.  This is precisely what consumer advisers regularly tell everyday Americans.  *See, e.g., Are You Ever Allowed to Spend Money That Was Mistakenly Deposited Into Your Bank Account?*, N.C. CONSUMERS COUNCIL, https://www.ncconsumer .org /news-articles-eg/using-money-mistakenly-deposited-into-your-account.html <last visited December 26, 2019> ("If you ever run into a situation where you notice an unexpected deposit, you should leave it alone and notify your financial institution as soon as possible."); Miriam Caldwell, *What Happens If the Bank Makes a Deposit Into the Wrong Account?,* THE BALANCE https://www.the balance.com/ can-bank-make-deposits-to-wrong-account-2386128 <last visited December 26, 2019> ("It is essential that you balance your checkbook or check your actual account balance on a regular basis.  This can help you detect any discrepancies with your account, whether it be an accidental deposit to your account, an erroneous charge, or accidental credit."); *id.* ("If you spent any of this money, you will be responsible for paying it back.  In some cases, and if the amount is large enough, you could also face criminal charges for spending money that isn't yours.").

BitPay provides no reasoned basis in fact or law why a corporate entity should not be responsible, like ordinary consumers, for keeping track of its accounts, notifying a transferor promptly if an erroneous credit is made, and returning such property.  This is precisely what California law incentivizes, and it is not the role of this Court to re-write long-standing tort principles of state law.  BitPay concedes it committed acts of conversion.  Like any other defendant, it must

provide the authorized remedy for its tortious conduct.  BitPay must be ordered to return 200 Bitcoins to Ox Labs.

## C.   ALTERNATIVELY, OX LABS IS ENTITLED TO APPROPRIATE MONETARY DAMAGES

If the Court agrees that Ox Labs is entitled to the return of 200 Bitcoins, then it need go no further.  Ox Labs will pursue compensatory damages, as authorized by Section 3336 of the California Civil Code ("Section 3336"), only if the Court or the jury decline to award Ox Labs the return of its property.  *See Minsky*, 11 Cal. 3d at 121.  However, Ox Labs is not required to elect its remedy at this stage.  *See Roam v. Koop*, 41 Cal. App. 3d 1035, 1039 (1974) ("Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment."); *Jahn v. Brickey*, 168 Cal. App. 3d 399, 406 (1985) (rejecting argument that election of remedies must be made prior to submission of case to jury).

Significantly here, BitPay does *not* argue that Ox Labs is not entitled to damages under Section 3336.  Since liability is established, per the discussion above, BitPay therefore concedes that Ox Labs is entitled to "[t]he value of the property at the time of the conversion, with the interest from that time" and "fair compensation for the time and money properly expended in pursuit of the property."  *See* Section 3336.  This amount vastly exceeds the approximately $57,000 BitPay "tendered" and now asserts as the upper limit of Ox Labs' recovery.

The self-serving mistake that BitPay has made in its current Motion (which it first perpetuated in its Motion for Summary Judgment) is assuming that the "time of the conversion" for purposes of Section 3336 is the time when Ox Labs first made the crediting error, *i.e.*, July 10, 2015.  *See* Pretrial Order at 3 (Stipulation No. 5).  That is not "the time of the conversion."  Instead, under controlling California law, the time of the conversion here, where the property was not taken unlawfully

- 13 -

but instead was erroneously provided, is when "the return of the property has been demanded and refused." *See Bufano v. San Francisco*, 233 Cal. App. 2d 61, 70 (1965). That date is June 6, 2017 (Pretrial Order at 3, Stipulation No. 10), and the value of one Bitcoin on that date was **$2,834.21** (*id.* at 4, Stipulation (d)). In other words, the value of the property at the time of the conversion is 200 x $2,834.21 or **$566,842**. Prejudgment interest of 7% running from June 6, 2017, which will continue to accrue until entry of judgment, would currently yield an additional **$101,860.73** as of December 30, 2019. *See Moreno v. Greenwood Auto Ctr.*, 91 Cal. App. 4th 201, 209 (2001); *Pacific-Southern Mortg. Trust Co. v. Ins. Co. of N Am.*, 166 Cal. App. 3d 703, 716 (1985); *State Farm Mut. Auto. Ins. Co. v. Rodriguez*, 568 B.R. 328, 347 (2007). In short, BitPay is entitled, at a minimum, to **$668,702.73** before consideration of the "fair compensation for the time and money properly expended in pursuit of the property." *See* Section 3336.

Section 3336 alternatively permits a conversion plaintiff to seek damages in "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted." Section 3336. "[W]here proof establishes an injury beyond that which would be adequately compensated by the value of the property and interest, the court may award such amounts as will indemnify for all proximate reasonable loss caused by the wrongful act." *Lint v. Chisholm*, 121 Cal. App. 3d 615, 624–625 (1981) (internal citations omitted). "In exceptional circumstances, to avoid injustice, loss of profits may be the measure." *Newhart v. Pierce*, 254 Cal. App. 2d 783, 794 (1967) (internal citation omitted); *Myers v. Stephens*, 233 Cal. App. 2d 104, 119 (1965) ("Turning to the present case in the light of these principles, we are satisfied that plaintiff has established a satisfactory basis for estimating what his anticipated profits would have been had there been no tort.").

- 14 -

There is no doubt in this case that Ox Labs suffered an injury "beyond that which would be adequately compensated by the value of the property [at the time of the conversion] and interest."  BitPay admits that the value of 200 Bitcoins is currently approximately **$3 Million**.  *See* Motion at 1 ("Today, 200 bitcoin is worth approximately three million dollars.").  And that is before the jury even considers the value of the "hard fork benefits" Ox Labs was deprived of (Pretrial Order at 3, Stipulation Nos. 11 & 12, *id.* at 4 Stipulations (g)-(k)) or the prejudgment interest and fair compensation for the time and money Ox Labs properly expended in pursuit of the property that Section 3336 expressly authorizes.  In short, in the unlikely event that the Court determines that Ox Labs is not entitled to the return of 200 Bitcoins *simpliciter*, the parties will need to present their damages case to the jury, with exposure to BitPay well in excess of $3 Million.

## III.   CONCLUSION

BitPay has admitted facts establishing its liability for conversion.  Ox Labs is therefore entitled to the return of 200 Bitcoins.  This relief is authorized by California law and will not require a trial.  If the Court find that such relief is either not available or that a jury must resolve some subsidiary fact issue before it can be awarded, Ox Labs is also entitled to present its case for appropriate compensatory damages, well exceeding $3 Million at today's values, for jury determination. BitPay's Motion for Judgment as a Matter of Law must be DENIED.

Dated:  December 30, 2019            Respectfully Submitted,

**LEIDER + AYALA-BASS LLP**

By: ___*/s/ Philip A. Leider*_____
       Philip A. Leider

Attorneys for Plaintiff
OX LABS INC.

- 15 -

## CERTIFICATE OF SERVICE

I certify that counsel of record, listed below, is being served on December 30, 2019, with a copy of this document through the CM/ECF Filing System as identified on the Notice of Electronic Filing dated December 30, 2019.

/s/ *Anahit Samarjian*
Anahit Samarjian

Benjamin T. Wang
bwang@raklaw.com
James Tsuei
jtsuei@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard,12th Floor
Los Angeles, California 90025

Lawrence H. Kunin
lhk@mmmlaw.com
MORRIS, MANNING & MARTIN, L.L.P.
1600 Atlanta Financial Center
3343 Peachtree Road N.E.
Atlanta, Georgia 30326